JAMES C. MASON v. RICHMOND & DANVILLE RAILROAD COMPANY.

*Action for Damages—Negligence—Contributory Negligence—*
*Proximate Cause of Injury—Brakeman Coupling Cars—*
*Disobedience to Rules—Waiver—Vice-principal.*

1. Where a plaintiff brakeman disregarded the rules of a railroad company forbidding brakemen to go between the cars in coupling them, which he had agreed to observe, and was injured, the fact that the conductor of the train, who had previously seen him go between cars in coupling them, told him to "hurry up and couple the cars" did not amount to an order to go between the cars so as to relieve the plaintiff from the imputation of contributory negligence in so doing.

2. While a brakeman is not culpable for exposing himself to danger in disregard of the rules of the company but in obedience to the orders of the conductor in charge of the train, yet the fact that a conductor under whom a brakeman formerly served told him to go between the cars when they could not otherwise be coupled did not justify him in doing so several months later when under the control of another conductor who gave no such order.

3. Where plaintiff and defendant were both concurrently negligent and the negligence of the former was the proximate cause of injury to the plaintiff the latter cannot recover damages for the same.

4. A conductor in charge of a railroad company's train is, as to those subject to his orders on the same train, a vice-principal acting for the company.

MASON *v.* RAILROAD.

CIVIL ACTION for damages, brought by the plaintiff against the defendant for personal injury suffered on the morning of December 14, 1889, at Durham, N. C., tried before *Brown, J.,* and a jury, at August Term, 1893, of GUILFORD Superior Court.

The plaintiff was a brakeman on a "mixed train" running between Raleigh and Greensboro on December 14, 1889, of which Capt. C. B. Guthrie was the conductor. Plaintiff had served under Captain Guthrie for three months previous and had formerly been working on a train of which Capt. J. E. Dick was conductor. While serving under Dick plaintiff signed a printed agreement as follows:

"I fully understand that the rules of the Richmond & Danville Railroad Company positively prohibit brakemen from coupling or uncoupling cars except with a stick; and that brakemen or others must not go between the cars under any circumstances for the purpose of coupling or uncoupling, or for adjusting pins, etc., when an engine is attached to such cars or train; and in consideration of being employed by said company I hereby agree to be bound by said rule, and waive all or any liability of said company to me for any results of disobedience or infraction thereof. I have read the above and fully understand it.
"(Signed)       J. C. MASON."

Part of the agreement is in his own writing, to-wit, "I have read the above and fully understand it." This paper is dated February 2, 1889.

On the trial the agreement was read to the jury and put in evidence.

Plaintiff testified that at the time he signed the agreement, February 2, 1889, and afterwards Captain Dick told him, "When you cannot couple with a stick couple with your hand."

Concerning the injury complained of, plaintiff testified:
"That on December 14, 1889, he was in the employment
of the Richmond & Danville Railroad Company as a
brakeman and baggage-master, on a mixed train running
between Greensboro and Raleigh. That he arrived at Dur-
ham on the morning of the 14th December, 1889, at 6
o'clock, and it was still dark at that time. The conductor,
Mr. C. B. Guthrie, ordered the witness to get some freight
cars from a side-track, which he did and threw the cars out
on the main line. Guthrie told witness, "Hurry up and
couple cars; we are behind and must get away from here."
He went back to couple the cars. He had a coupling stick
about four feet long, which he had picked up from the side
of the track. The railroad company did not furnish the
sticks, but the brakemen got them from the saw-mills and
other places along the line of the road. The witness had
a lantern which he used in making the couplings. It was
quite dark and the lantern was the only light he had. He
put the pin in the drawhead, as he thought it would easily
couple, but the pin was crooked and did not slip down.
The witness then stepped in between the cars so as to push
the pin down with his hands. While thus engaged he
heard the cars attached to the engine coming back. Wit-
ness looked to see if there were any bumpers attached to
the cars and saw none. He commenced going back to get
out, but before he got out the corners of the cars came
together and crushed him. He was injured in the breast,
hurting his lungs, ribs and breast-bones. He knew nothing
for several hours. He was hurt about 6 o'clock in the
morning. The ends of the cars struck him and the corners
caught him between them.

"Witness had coupled cars with his hands before. He
thinks Guthrie had seen him do it."

Plaintiff's counsel in response to an inquiry by the Court stated that he did not claim that Guthrie ever gave orders to the plaintiff to use his hand in coupling. Conductor Dick left the service of the company some little time after witness was hurt. Witness had not served under Dick for some months before witness was hurt.

Upon the evidence of the witness, and upon the statement of the counsel that the plaintiff did not claim that Conductor Guthrie ordered him to use his hand in coupling cars on December 14, 1889, or that Conductor Guthrie had ever at any time told him to use his hand in coupling when he could not adjust the pin with a stick, the Court intimated the opinion that the plaintiff could not recover. In deference to the opinion a juror was withdrawn, and the plaintiff took a nonsuit, and excepted to the ruling and intimation of the Court and appealed.

*Mr. J. A. Barringer,* for plaintiff.
*Messrs. D. Schenck* and *Busbee & Busbee,* for defendant.

Avery, J.: When this case was brought before us by the former appeal (111 N. C., 482) there was evidence that the conductor in charge of the train, when the defendant was injured between two of the cars composing it, had told the defendant that "whenever he could not couple the cars with a stick, to go in and couple them with his hands," and that the latter, finding it impossible to couple otherwise, had exposed himself to danger in obedience to that order. In that aspect of the testimony the question arose whether a conductor in charge of a separate train was a vice-principal clothed with authority of the corporation to waive its own rule and thereby, in advance, condone the negligent conduct of the defendant, or prevent the company from pleading it as his voluntary act. "The question
46

involved" (said the Court) "in all such cases is whether the subordinate feels constrained to obey the orders of his superior, though apparently obedience will be attended with peril, rather than run the risk of defying his authority. * * * That a brakeman feels impelled to obey the orders of the conductor no observant person can deny; and since we can take judicial notice of a relation so common and well understood it would be a voluntary preference of fiction to fact were we to adhere to an arbitrary rule founded upon a supposed reason that we know does not exist."

It was admitted on the trial below, however, that the conductor in charge when the defendant was injured was not the same person who had on a former occasion given the general order mentioned for the government of the brakeman in coupling cars. We still adhere to the doctrine that a brakeman is not culpable for exposing himself, in obedience to the orders of the conductor in charge of the train, to peril to which his voluntary exposure of himself would constitute contributory negligence. Our ruling was founded both upon the principle that the conductor, as middle-man, had on behalf of the company waived its express regulation, and upon the idea that the known relation between a conductor and a brakeman, running on the same train as his subordinate, was such as to subject him to a well-grounded fear of dismissal should he hesitate to obey such an order, and thereby relieve him of legal culpability for conduct which, but for the fact of his acting under the fear of the consequences of disobedience, would constitute negligence. But we did not intimate or intend to intimate that a brakeman would be warranted in assuming that another conductor, under whom he had served for several months without receiving any order modifying the written rule, would discharge him for failure to couple with

his hands when a stick would not answer the purpose. And we do not think that the command of Guthrie to "hurry up," coupled with the testimony of the plaintiff that he thought Guthrie had seen him couple with his hands before that time, is tantamount to an express command, such as was given by Conductor Dick, who had previously been his superior.

The case now presented for our consideration is therefore materially different from that upon which we passed in the former appeal, especially in the fact that the plaintiff voluntarily subjected himself to danger not necessarily incident to the duty which he had contracted to perform, and when, but for his needless exposure of himself, the injury would not have been received. His own carelessness being by that test the proximate cause of the injury, we have here the converse of the general legal proposition to which we gave our sanction in *Deans* v. *Railroad,* 107 N. C., 686. In the one case the defendant company is relieved from liability, because, but for the negligence of the plaintiff supervening upon its own previous want of care, no injury would have been inflicted; while in the other the plaintiff's previous culpability would not have caused the injury if the defendant in turn had not been guilty of subsequent carelessness. There is no better test of the accuracy of mathematical or the soundness of metaphysical reasoning than by considering the reasonableness of the converse of the proposition submitted as a rule.

While we do not consider ourselves under any obligation to change our rulings, in order to conform to those of any Court in the country, except in so far as the Supreme Court of the United States has power of review by virtue of the Constitution, it may not be amiss to say that upon a careful examination of the late authority to which counsel called our attention (*Railroad* v. *Bough,* 149 U. S., 368)

we find that the Supreme Court of the United States has
not modified or receded from the principle announced in
*Railroad* v. *Ross*, 112 U. S., 377, that a conductor in charge
of a train is, as to those subject to his orders on the same
train, a vice-principal, acting for the company.

For the reasons given we think that there was no error
in the intimation of the trial Judge that the plaintiff was
not entitled in any view of the evidence to recover.

No Error.


BURWELL, J., concurring: I concur in the disposition
made of this appeal because I see in the case no evidence
whatever of negligence on the part of the defendant, and
abundant evidence of negligence on the part of the plain-
tiff. The rule of the defendant company, of which the
plaintiff had full knowledge, and which, out of abundance
of caution, he had been required specially to promise to
obey, prohibited him from going between cars for the pur-
pose of coupling or uncoupling them, "under any circum-
stances,". when they were attached to an engine. Having
promulgated this general and imperative rule to all its
couplers, the servants of the company who were charged
with the duty of making up and inspecting trains were
permitted to act upon the supposition that it would be
obeyed. The engineer was permitted, in moving his engine,
to act upon the same belief. The rule was notice to the
plaintiff that he should expect no provision for his safety
when the cars were pushed together by the movement of
the engine, for he was expected not to go between them.
Assuming that it was made in good faith (and there is no
pretence or proof that it was not), I feel constrained to say
that it seems to me a beneficent, not an unreasonable regu-
lation, and that while for some purposes a conductor in
charge of a train is an *alter ego* of the corporation that

principle should not, in my opinion, be construed to authorize the abrogation by him of rules made by the managing officers of the company to govern the conduct of its employees.    The servants of a great transportation company constitute an army in which rigid discipline must be enforced, not less for the safety of the public than for the safety of its own members.    There must be obedience or there will be disaster.    I think the Courts should seek to encourage the strict enforcement of all reasonable regulations made in good faith.