## THOM v. PITTARD.

(Circuit Court of Appeals, Fourth Circuit. May 22, 1894.)

No. 71.

1. RECEIVERS—RIGHT TO APPEAL.
    A receiver of a railroad, appointed in a suit to foreclose a mortgage thereon, against whom a decree is rendered for damages for injuries to an employé from negligence in operating the road, is entitled to an appeal therefrom, when allowed by the court.

2. APPEAL—EXCEPTION TO INSTRUCTIONS.
    A general exception to a charge, containing nothing special to any particular part of it, cannot be considered.

3. MASTER AND SERVANT—NEGLIGENCE OF FELLOW SERVANTS.
    Railroad section men and laborers on repair trains, employed by the same master for the same general purpose of keeping the roadbed and track in order, and working for the same general result, are fellow servants; and the employer is not liable for injuries to one, caused by negligence of another, even though such other has control over either gang of men.

Appeal from the Circuit Court of the United States for the Eastern District of Virginia.

This was a suit by Newgass & Co. against the Atlantic & Danville Railroad Company to foreclose a mortgage on its road, in which Alfred P. Thom was appointed receiver. John B. Pittard filed a petition claiming damages for personal injuries received while in the employ of the receiver. The circuit court rendered a decree for petitioner. The receiver appealed.

Richard Walke, for appellant.

Robert M. Hughes, for appellee.

Before GOFF and SIMONTON, Circuit Judges, and JACKSON, District Judge.

GOFF, Circuit Judge. While the Atlantic & Danville Railroad Company was being operated by Alfred P. Thom (a receiver appointed by the circuit court of the United States for the eastern district of Virginia, in the suit of Newgass & Co. against said railroad company for the foreclosure of a mortgage on the same), John B. Pittard was employed by those representing said receiver as a laborer on a material or work train, which was used on the line of the railway, in hauling dirt, rock, and other material from one point to another, and in repairing the roadbed, and was injured by the collision of said train with a hand car which was then being used by a section boss in transporting his employés to their place of work. The collision took place on the morning of July 21, 1891, on the line of said railway between Boydton and Gill's station. The work train was under the charge of the foreman of the work gang, Jefferson Jones, who also acted as conductor, and the hand car was directed by Section Master King. The work train was moving east; the hand car, west,—and, as they were on the same track, they did not succeed in passing each other. It was the duty of Jones to assign the men to their work; to see to the hauling of dirt, rock, and material; and to keep his train out of the way of the regular trains on the road. He received his instructions direct from the supervisor of the road, who passed over the line daily, and gave him and the other foremen such special instructions as he deemed proper,—such as the condition of affairs required. It was the duty of King to keep his section of the road, about six miles in length, clear of obstructions, and to keep the track in good and safe condition, the bridges in repair, and to see that the men under him (five in number) properly discharged their duties. He had no control over any of the men on the work train, nor had Jones any authority over the section master and his gang. The work train in charge of Jones had the right of way over the road, in preference to the hand car controlled by King, which was only used in going to and returning from work at different points on the road, and when so used it was usually protected by a flagman. At the time of the collision the flagman was not on duty, but, a short time before, Jones had stopped the car, and, not hearing the work train, had proceeded on his way. In rounding a curve in a cut, the collision occurred, and two of the flat cars of the work train were thrown from the track, Pittard, who was on one of them, sustaining a fracture of the clavicle, with internal injuries, painful and dangerous in their nature, preventing him from engaging in work for some weeks. On the 18th day of May, 1892, he filed his petition, with the permission of the court in the chancery cause mentioned, against said receiver, who appeared, and answered it. In his petition he claimed that his injuries were on account of the carelessness, improper conduct, and neglect of the receiver and his agents; and he prayed for an

inquiry as to the amount of his damages, and that the same might be decreed to him. The receiver answered, denying the allegations of the petition; claiming that there was no liability on him on account of said accident and injuries, because the same had been caused by the acts of petitioner's fellow servants, the liability to which was imposed upon and assumed by petitioner when he accepted employment from and under said receiver. On the 20th day of April, 1893, the court directed that a jury be impaneled and sworn to try the issue joined on the petition and answer. On the 12th day of December, 1893, the jury heard the evidence, argument of counsel, and the charge of the court, and, after considering the case, assessed the damages at $2,500. For this sum, with interest thereon, and costs, the court entered a decree in favor of petitioner against the receiver, and adjudged the same to be one of the liabilities of the receiver, mentioned in the decree of sale, which had been theretofore entered. The receiver petitioned for an appeal from said decree, which was duly granted by the judge holding the circuit court. During the trial three several bills of exceptions were granted, at the request of the receiver, to the action of the court, in the giving of instructions asked for by the petitioner, and in refusing instructions prayed for by the receiver. The same are relied upon in the assignment of errors, and now come before this court for review.

But first we have a motion to dismiss the appeal as improvidently awarded, made by the appellee; the reason assigned being that the receiver is in fact not a party to the suit, and therefore not entitled to an appeal. It is claimed that the receiver, the officer and servant of the court, subject to its orders, without personal interest in the funds under his control, which are to be accounted for as the court may direct, is not to be permitted to refuse to obey the court's orders by appealing from its decrees. But we must remember that the receiver represents all the parties in interest. He stands for the railroad company as well as for all persons having claims against it, and he speaks for the bondholders as well as for the stockholders. While he has no personal interest in the proceedings, except to faithfully and impartially discharge his duties, it is incumbent upon him to carefully protect the property confided to his keeping; to report to the court all matters connected therewith, relating to its safekeeping and proper disposition; to obtain permission to sue for debts due, and leave to pay claims owing by him. Permission given the receiver to sue, or direction to him to defend, should take with it the right to follow the suit to the court of last resort. It is a plausible argument that counsel for appellee submits, but it is, we think, without real merit. While it is true that any of the defendants to said chancery suit, interested in the property of the railroad company, and in its proper distribution, as also the plaintiffs, could have appealed from said decree in favor of appellee, proper steps therefor having been taken, still it does not follow that the receiver, who was in fact the defendant, so far as the issues raised by the petition were concerned, could not also appeal. In suits like the one in which this petition was filed, after the ap-

pointment of a receiver, there is no one but him to defend the issues presented by such pleadings; and it is, at least, not best to have it understood that the court's directions to him to defend extend only to the court that hears the trial. But, so far as this proceeding is concerned, there is no difficulty, as the court below, whose officer the receiver was, gave him permission to prosecute still further the questions raised by the petition, when it approved his application for, and granted, this appeal. We consider the question settled in favor of the right of the receiver to appeal in cases like the one we now examine by the decision of the supreme court of the United States in Farlow v. Kelly, 108 U. S. 288, 2 Sup. Ct. 555, and 131 U. S., append. cci. It is insisted for the appellee that the right of the receiver, as an abstract question of law, to appeal, was not involved in that case. But it must be admitted that the supreme court held that in cases where an appeal had been granted the appellate court would entertain the same, and treat the order granting it as permission to appeal. While it is true that under the provisions of section 692, Rev. St. U. S., it follows, of course, that an appeal will be granted if prayed for by one who has the right to it, still it is the duty of the trial court to determine if the party asking for the appeal stands in such relation to the case that he can demand it. If he does not occupy such position the court can properly refuse the appeal. If the appeal is refused in a case where it properly lies, mandamus will issue. Ex parte Jordan, 94 U. S. 248.

The appellant claims that the court below erred in its charge to the jury, to the giving of which he at the time excepted. The bill of exceptions relative thereto recites as follows, after setting forth in full the charge:

"And thereupon the defendant, by his counsel, objected to the giving of the said charge, which objection the court overruled, and gave the said charge, to which ruling of the court, overruling the said objection, and granting the said charge, the defendant, by his counsel, excepted, and prayed that this, his bill of exceptions, might be signed, sealed, and made a part of the record in this cause, and the same is accordingly done."

This is a very general exception, containing nothing special to any particular part of the charge. It does not comply with the form nor the spirit of the practice, as established by the supreme court, and it is in conflict with rule 10 of this court, which is as follows:

"The judges of the circuit and district courts shall not allow any bill of exceptions which shall contain the charge of the court at large to the jury in trials at common law, upon any general exception to the whole of such charge. But the party excepting shall be required to state distinctly the several matters of law in such charge to which he excepts; and those matters of law, and those only, shall be inserted in the bill of exceptions and allowed by the court."

A general exception to the charge as a whole is not proper, and bills of exceptions so drawn should not be allowed. The court below was entitled to a full specification of the objection; and its attention should have been particularly called to those portions of the charge deemed objectionable, so that correction could then have been made, had the court thought it proper so to do. We must therefore decline to consider this bill of exceptions, and the assignments of

error based thereon. Insurance Co. v. Raddin, 120 U. S. 183, 7 Sup. Ct. 500; Mining Syndicate v. Fraser, 130 U. S. 611, 9 Sup. Ct. 665; Anthony v. Railroad Co., 132 U. S. 172, 10 Sup. Ct. 53; Block v. Darling, 140 U. S. 234, 11 Sup. Ct. 832; Burton v. Ferry Co., 114 U. S. 474, 5 Sup. Ct. 960; Railroad Co. v. Varnell, 98 U. S. 479; Van Gunden v. Coal & Iron Co., 8 U. S. App. 229, 248, 3 C. C. A. 294, 52 Fed. 838.

The appellee contends that the appellant cannot avail himself in this court of the bill of exceptions taken to the ruling of the court below, refusing to give the three instructions asked for by the receiver, for the reason that but one bill of exceptions was taken relative thereto, from which it appears that the receiver, by his counsel, moved the court to give the jury the following instructions:

"No. 1. If the jury believe from the evidence that the petitioners were workmen or employés on the railroad, and at the time of the accident were, in the course of their employment, being carried by a material or work train of the Atlantic & Danville Railway Company, engaged in doing work on the railroad from Jeffress station eastwardly toward Gill's station, and that said work train was in charge of a conductor or foreman acting under the orders of the supervisor of the western division of the road, and who received his orders from the said supervisor in regard to the work on the road, and had been working under the instructions of said supervisor near Gill's station on said road, and that the accident was caused by the said material or work train coming into collision, a short distance east of Boydton, with a hand car of the company, in charge of a section master, with workmen or laborers under him, going westwardly, and in the opposite direction from that of the said work train, and that the duty of this section master was to keep in order and repair, with the workmen under him, about six miles of the road at or near Boydton, and if they believe from the evidence that the accident occurred from negligence on the part of the conductor or of the engineer of the said material or work train, then the court instructs the jury that the said petitioners were injured by the negligence of persons standing in the relation towards them of coemployés of the receiver of said company, whose negligence was a risk incident to the plaintiffs' or petitioners' employment, and the said company, or the receiver thereof, is not liable for such negligence, and they must find for the defendant, Alfred P. Thom, the receiver of said company.

"No. 2. If the jury believe from the evidence that the petitioners were workmen or employés on the railroad, and at the time of the accident were, in the course of their employment, being carried by a material or work train of the Atlantic & Danville Railway Company, engaged in doing work on the railroad from Jeffress station eastwardly towards Gill's station, and that said work train was in charge of a conductor or foreman acting under the orders of the supervisor of the western division of the road, and who received his orders from the said supervisor in regard to the work on the road, and had been working under the instructions of said supervisor near Gill's station on said road, and that the accident was caused by the said material or work train coming into collision, a short distance east of Boydton, with a hand car of the company, in charge of a section master, with workmen or laborers under him, going westwardly, and in the opposite direction from that of the said work train, and that the duty of this section master was to keep in order and repair, with the workmen under him, about six miles of the road at or near Boydton, and if they believe from the evidence that the accident occurred from negligence on the part of the section master in charge of the said hand car, then the court instructs the jury that the said petitioners were injured by the negligence of a person standing in the relation towards them of co-employé of the receiver of said company, whose negligence was a risk incident to the plaintiffs' or petitioners' employment, and the said company, or the receiver thereof, is not liable for such negligence, and they must find for the defendant, Alfred P. Thom, the receiver of said company.

"No. 3. The court instructs the jury, in reference to any question of negligence on the part of the conductor of the work train, that speed is not in itself negligence, and that the conductor was under no obligation to run his train at a slow or moderate speed from any expectation of meeting or coming into collision with the hand car."

"And thereupon the said petitioner, by his counsel, objected to the granting of each one of the said instructions, which objection the court sustained, and refused to give the said instructions, or either of them, to which said rulings of the court the defendant, by his counsel, excepted, and prayed that this his bill of exceptions might be signed, sealed, and made a part of the record in this cause, and the same is accordingly done," which said instructions, it is claimed by appellee, were presented as a single request, and that, as the court was certainly justified in refusing the third, it was proper for it to reject them all. U. S. v. Hough, 103 U. S. 71; Insurance Co. v. Smith, 124 U. S. 405, 8 Sup. Ct. 534. But we do not find that the rule here cited is applicable to the present case, as it appears from the bill of exceptions that the petitioner, "by his counsel, objected to the granting of each one of said instructions, which objection the court sustained, and refused to give said instructions, or either of them, to which said rulings of the court the defendant excepted," etc. Hence, it appears that the instructions so offered and rejected were not considered by counsel, nor treated by the court, as a single request.

Did the court err in refusing to give the said instructions, or either of them? On the questions raised by them, there has been great diversity of opinion. Authorities now differ, and recent cases conflict. Were all the men engaged on the work train fellow servants, in the sense in which those words are used in the decisions, of all those engaged on the hand car? We must closely scrutinize the testimony submitted to the jury before we can properly answer this question, for the facts alone must determine it. Some conductors and some supervisors or section masters may, in one sense, represent the master, and become vice principals, while other conductors and supervisors or section masters will always remain fellow servants of those employed with them. One may, in the discharge of his duties, have departmental powers, while another, of the same official name or grade, may be restricted to a small section, with no power to regulate the movement of trains, and no control over others beyond his immediate locality.

Foreman Jones and his men were engaged on the work train, in hauling sand, dirt, and material, part of which was used in repairing the road bed and track. Section Master King and his men were employed in keeping the same road bed and track in order, using for that purpose a portion of the load of the work train. The laborers on the train, as well as those on the hand car, were employed by the same master, paid from the same fund, and were engaged in a common work. The work train was used on but a few miles of the road, and the foreman of the gang, who acted as conductor of the train, was himself a laborer with his men. It is, we think, a misconception of the use of the words used in some of the decisions

on this question to designate the foreman, Jones, as "a vice principal," or the section master, King, as "the head of a department," or either of them as the "representative of the railroad," for whose negligence the company or receiver is responsible. These petty section officials surely do not occupy such official positions—do not have such authority and control—as will justify the courts in holding that they represent the railroad company, its alter ego, whose negligence is its negligence. To so hold would be to ignore the long-established rule relative to the employers' exemption from responsibility for injuries to their servants on account of the negligence of their fellow servants. Jones was not even a "conductor," in the sense in which that word is employed in the opinion of the supreme court in the case of Railroad Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. 184, relied upon by the appellee. His train ran under no schedule, and to no station. It had no time for starting, and no special place to go to. Its duty was to do the work before mentioned, at such time as best it could; watching chances, utilizing time. and keeping out of the way of other trains. The men on this work train knew the character of work done by the men on the hand car, were aware that it traveled on the track, and that their train had the right of way over the track, in preference to said hand car. The men on these different cars were in the habit of passing each other, while going to and from work, and when engaged at it, the hand car being lifted from the track in order that the work train might pass. The section master was in control of only five men, and had no authority over any of the men on the work train, nor did the foreman of the latter have power over any of the men on the hand car. We have no difficulty in reaching the conclusion that these men were fellow servants, and the fact that in each gang there was one who exercised control over the others, does not affect the liability of the receiver, as their common employer, for injuries to one, the result of an accident caused by the carelessness of another. They were engaged to perform certain duties, the nature of which they were advised of, and the dangers attending the same they were aware of, and they, each and all, took the risk incident thereto, connected with their daily labor, and the going to and from the same; and it follows that, if one of them suffers by exposure to such risks, he cannot recover compensation from his employer. Randall v. Railroad Co., 109 U. S. 479, 483, 3 Sup. Ct. 322; Farwell v. Railroad Co., 4 Metc. (Mass.) 49; Brown v. Maxwell, 6 Hill, 592; Railroad Co. v. Ross, 112 U. S. 377, 382, 5 Sup. Ct. 184; Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914.

It is also shown by the authorities just cited, and by a long list of decisions referred to in them, that the employer will be exempt, though the servant whose negligence caused the injury was not of the same grade in the service as the party injured, nor engaged in the same kind of work. If the servants are employed for the same general purpose by the same master, and are working to produce the same result, as are section men and laborers on repair trains, then they are fellow servants, and the master is not liable for injuries to one caused by the negligence of another.

The appellee insists that it was the duty of the receiver to provide suitable machinery and a safe place for the laborers to work at; to furnish a safe track, free from obstructions, for the repair train to run on; and to provide proper rules and regulations for the protection of his workmen against the dangers incident to the performance of their duties. This may be conceded, but will not avail the cause of the appellee, as we see this case. It is not shown that any material defect existed in any of the machinery used by the workmen, and the safe place at which to work must be considered in connection with the dangers attending the labor, to do which the servant was employed. There is no testimony tending to show that the track was not in good order. It is shown that the trains passed over it safely, daily, and that it had no connection with the accident, unless, as is claimed, the hand car was an obstruction on the track, for which the receiver was responsible. But, if the two gangs of workmen were fellow servants, then the receiver was not responsible for such obstruction; and if the hand car was on the track when it should not have been, and if it caused the accident by the negligence of its foreman, then, under the facts of this case, the conclusion is not justified that the receiver failed in his duty to his employés. It has been repeatedly held that the negligent use by one employé of proper and safe machinery provided by the master will not be held a breach of the latter's duty to other employés. If appellee's contention in this respect can be sustained, then all negligent use of machinery, and all collisions of trains caused by negligence, must be held to be a breach of the master's duty to provide a safe place to work. We can find no authority to sustain this position, and we see no reason for it. The fact is that all men working on railroad trains, being aware, as they are, that many other trains must pass over the same track that their train does, assume the risk when they take employment of the negligence of those operating such other trains.

For the reasons mentioned, we think the circuit court should have given the first and second instructions asked for by the defendant below. We do not find it necessary to the proper disposition of this case to consider other questions referred to in the record, and argued by counsel. The decree appealed from will be reversed, the verdict of the jury set aside, and a new trial had.