RICHMOND & D. R. CO. v. FINLEY.

(Circuit Court of Appeals, Fourth Circuit. October 2, 1894.)

No. 80.

1. MASTER AND SERVANT—RAILROAD COMPANY—RULES—WAIVER BY ENGINEER OR CONDUCTOR.

An engineer in temporary charge of a train, in the absence of any conductor, cannot waive a rule, well known to a brakeman, absolutely prohibiting brakemen from coupling and uncoupling cars except with a stick, by ordering such brakeman to go between cars, and place in position, by hand, a bent coupling link, which cannot be controlled with coupling sticks. 59 Fed. 420, reversed.

2. SAME—ASSUMPTION OF RISK.

Where a brakeman goes between the cars to couple or uncouple them by hand, in obedience to an order of an engineer or conductor, but in viola-

tion of well-known rule absolutely prohibiting brakemen from coupling or uncoupling cars except with a coupling stick, he performs an act outside the scope of his employment, and assumes the risk.

Error to the Circuit Court of the United States for the Western District of North Carolina.

This was an action by J. S. Finley against the Richmond & Danville Railroad Company to recover damages for personal injuries. There was a verdict and judgment for plaintiff, and defendant brings error. Reversed.

This case comes up by writ of error to the circuit court of the United States for the western district of North Carolina. The action is for damages against a railroad corporation for injuries sustained by its employé from one of its trains. The plaintiff was a brakeman on the train which injured him. Upon entering his employment as brakeman, he signed the following statement and contract, in the presence of a witness:

"Richmond and Danville Railroad Co., W. N. C. Division.

"October 26th, 1889.

"I fully understand that the rules of the Richmond and Danville Railroad Company positively prohibit brakemen from coupling or uncoupling cars except with a stick, and that brakemen or others must not go between the cars under any circumstances for the purpose of coupling or uncoupling, or for adjusting pins, etc., when an engine is attached to such cars or train; and, in consideration of being employed by the said company, I hereby agree to be bound by said rule, and waive all or any liability of said company to me for any results of disobedience or infraction thereof. I have read the above carefully, and fully understand it."

A paper to this effect must be signed by every one entering the service of this company as brakeman, fireman, switchman, or flagman, before he is allowed to enter on his service. On 14th May, 1890, the train to which plaintiff was attached was employed at Asheville, N. C., in taking out cars loaded with coal from the yard, and putting them on a coal shute. The regular conductor of the train was absent. He had appointed another, however, in his stead. At the time of the accident, this substitute was at the coal shute, about one-fourth of a mile from the train, which was in the yard. With the train were the engineer and two train hands, the plaintiff and one Lyerly, and the fireman. The work on which they were engaged was this: The engine and tender would take the loaded cars one by one up the shute, discharge cargo, and come back for another load. From the testimony in the record there is some doubt who was in charge of the train when it would return to the yard for a loaded car. The learned judge who tried the case below left that question to the jury, and, as they found for the plaintiff, we will assume that the engineer was in charge of the train during the temporary absence of the conductor's substitute. The brake of the driving wheel of the locomotive was not in order; but the locomotive was supplied with other brakes. The brake on the driving wheel is not in universal use. The train having been returned to the yard for another loaded car, the plaintiff told the engineer that the link of the car was bent down so much that he could not get it up with a stick. He told him to raise it with his hand, and turn the link over. While he was doing this, the cars came together, and mashed his fingers, making amputation necessary. For this he brought his action.

George F. Bason, for plaintiff in error.

J. P. Morphew, for defendant in error.

Before GOFF and SIMONTON, Circuit Judges, and HUGHES, District Judge.

SIMONTON, Circuit Judge (after stating the facts). The question in this case is, was the plaintiff below guilty of contributory

negligence in attempting to couple the cars by going between them? On this point the judge charged the jury as follows:

"If you believe that the engineer had charge of the movements and management of the cars with the assent or knowledge of the temporary conductor, the conductor being absent, then he had the authority of a conductor in giving directions to subordinate employés, and could waive the general rules and contracts of the company; and if you are satisfied from the evidence that the engineer directed plaintiff to go between the cars, and to place a bent link in position for coupling, which could not be done with the coupling stick, and he exercised ordinary care in doing as he was directed, then he is entitled to recover compensatory damage for the injuries sustained."

We are of the opinion that this was error. There is too great a tendency to clothe subordinate employés with the power and duty of vice principals, and then to conclude that they represent the master in every respect, and as fully as if he were present. We have alluded to this in Thom v. Pittard (decided at our last term) 62 Fed. 232. Be this as it may, whatever may be the authority of a person, himself an employé on a train, over other coemployés on the same train, he and they are bound to respect and obey the general rules and regulations of their common master, whose orders press equally upon each of them, coming with the highest sanction, and each of them must know that the other cannot rescind them. The learned judge has invested the substitute of a substituted conductor with all the powers held by the highest officer of the railroad system. If this engineer, accidentally and temporarily in charge of a train, could rescind or waive or suspend a fixed rule. of the company, a rule impressed in the most formal way upon a very large class of employés,—the class engaged, or likely to be called upon to engage, in coupling cars,—as a part of the contract and a condition precedent to their employment, he could revoke all rules, and govern himself and control his train at his own will, and at the risk and responsibility of his employers. Granting that within the scope of his agency he represents his employer, it can scarcely be supposed that it is within the scope of the agency of an engineer, or even of a conductor, to rescind the standing rules of the company, or to cancel a contract made by his employer with one of his servants antecedent to and as a condition for his employment. When the plaintiff in the action below followed the suggestion of the engineer, he knew the risk he was taking, knew that he had contracted not to take it under any circumstances, knew that the engineer could not make him take it, and he assumed the risk himself. He was injured 14th May, 1890. He had been in this same service from 12th October, 1889. When he entered it, he fully understood that the rules of the company positively forbade brakemen, and him among them, from coupling and uncoupling cars except with a stick; that not only brakemen, but all other persons, must not go between cars under any circumstances for the purpose of coupling, uncoupling, or for adjusting pins, etc., when an engine is attached to such cars or train. In consideration that the company would employ and would continue to employ him, he bound himself to obey this rule, and assumed all results, not only of disobedience, but also of the

infraction of the rule. When, therefore, the engineer on the engine attached to the train suggested to him to go between the cars to couple, he knew that under no circumstances, not even by an order from a superior, could this be done without an assumption of risk by himself; and he knew, also, that he had waived in advance any liability of the company for this infraction of the rule. He had dealt with his master immediately, and had from him his instructions in writing. He had no right to permit the suggestion of a subordinate to reverse or annul his master's express direction,—a direction for the government of his conduct under all circumstances. See Railroad Co. v. Reesman, 9 C. C. A. 20, 60 Fed. 377. In a very able note to the report of the case at bar (59 Fed. 422) the judge who tried it, among other reasons for adopting the suggestion of the engineer by the plaintiff, says: "If the plaintiff had refused or failed to obey, he could at least have been reported for disobedience, which would probably have caused a discharge." We need not discuss the improbability of such action upon the part of the common superior,—the discharge of a train hand, because he obeyed the order of his master, and not the order of a coemployé contradicting it. There is no evidence whatever in the record that the engineer selected the train hands, or employed them, or had any authority to dismiss them, or that they got their wages through him,—reasons which influenced the court in Mason v. Railroad Co., 111 N. C. 482, 16 S. E. 698. The plaintiff was a man of full age, perfectly competent to take care of himself. This takes the case out of Fort's Case, 17 Wall. 553. The engineer made no peremptory order; certainly used no threats. When the plaintiff carried out his suggestion, he took all the risk. Hogan v. Railroad Co., 53 Fed. 522.

There is another view of this matter. Construing the terms of plaintiff's employment with the defendant railroad company by the paper quoted above, he was engaged as a*brakeman. with the distinct agreement that he was not to couple cars except with a stick, and was under no circumstances to go between the cars of a part of a train with an engine attached. This, then, comes within that class of cases in which an employé is directed to assume a risk not in his regular employment. See cases collected in 14 Am. & Eng. Enc. Law, p. 859, note 1. A railroad employé of mature years and experience, who is injured while coupling cars in obedience to the orders of his immediate superior, cannot recover merely because that duty is outside the scope of his employment, when he makes no objection to performing it. and there is no threat of dismissal in case of refusal. Hogan v. Railroad Co., 53 Fed. 519. In Leary v. Railroad Co., 139 Mass. 580, 2 N. E. 115:

"If a servant of full age and ordinary intelligence, upon being required by his master to perform other duties more dangerous and complicated than those embraced in his original hiring, undertakes the same, knowing their dangerous character, although unwillingly and from fear of losing his employment, and he is injured, he cannot maintain an action for the injury."

If the duty was not within his original employment, he could refuse it; and, if discharged, could recover on his contract of service. If, instead of refusing, he concludes to obey, he accepts the risk.

The judgment of the circuit court is reversed, with costs, and the cause remanded to that court, with instructions to dismiss the complaint.