## WRIGHT v. SOUTHERN RY. CO. et al.

(Circuit Court, W. D. North Carolina. April 30, 1897.)

1. MASTER AND SERVANT—NEGLIGENCE OF FELLOW SERVANTS.
A railroad employé, who starts upon a trip on a hand car on his own business or pleasure, assumes the risk of injury from a fast mail train, which he knows to be due, and cannot recover against the company for injury received while attempting, pursuant to an order of the foreman, to get the hand car off the track in the immediate presence of the approaching train.

2. SAME—CITY ORDINANCES REGULATING SPEED OF TRAINS.
City ordinances limiting the speed of railway trains are not for the protection of railway employés, but merely for that of persons crossing its tracks on the streets and highways.

3. SAME—FELLOW SERVANTS.
The conductor and engineer of a railway train which collides with a hand car are fellow servants of an employé riding upon the car so that he cannot recover for an injury resulting from their negligence.

4. SAME—STATE STATUTES—RETROACTIVE EFFECT.
State statutes modifying the common-law doctrines recognized by the federal courts in regard to fellow servants will not be construed to have a retroactive effect in the absence of express provision to that effect.

5. PRACTICE—NOLLE PROSEQUI.
Leave to enter a nolle prosequi as to certain defendants will not be granted after the court has rendered an opinion granting a motion to direct a verdict for defendants, though such verdict has not yet been formally rendered.

B. F. Long and L. S. Overmon, for plaintiff.
Charles Price, G. F. Bason, and L. C. Caldwell, for defendants.

DICK, District Judge. (A civil action to recover damages for the death of plaintiff's intestate by reason of the negligence of the defendant companies.) At the close of the plaintiff's case, the counsel of defendants declined to introduce evidence in defense, and made a motion to the court for an instruction to the jury to render a verdict for the defendants on the issues of fact submitted to them. This motion is, in substance, a demurrer to the evidence, and admits the truth of the matters of fact shown by the testimony. As there is no conflict in the evidence of plaintiff, the question of negligence on the part of defendants is a matter of law to be determined by the court.

The arguments of counsel were elaborate and forcible. Many authorities were cited, and diversities and conflicts of decisions were pointed out and commented upon. The diversities of many of these decisions resulted from the peculiar facts in each particular case. Notwithstanding the confusion in cases involving the liability of railroad companies to employés for injuries caused by the negligence of other employés, there are some principles well setled by numerous decisions of the state and federal courts. A person who enters into the service of a railway company impliedly assumes the risks and hazards usually incident to such employment, including liability to injury caused by the negligence of a fellow servant; and that he will exercise ordinary care to protect himself from obvious danger and injury while engaged in his employment. A railway company, as employer, impliedly engages with an employé that the place in which

he is to work and the tools and machinery which are furnished him shall be reasonably proper and safe, and be kept in such condition during the time of employment, and that he shall be associated with suitable, competent, and sufficient fellow servants. A failure to properly discharge these obligations and duties renders the company liable for any injury resulting therefrom to an employé who may be injured without any contributory negligence on his part. This is a positive obligation on the company, and must be fully performed. If the company intrusts the performance of these special duties to an employé, who fails, by negligence or otherwise, to discharge them properly, he is a representative of the company, and not a fellow servant of another employé who may sustain consequent injury. When a railway company has once complied with its positive and implied obligations to its employés, and then exercises due care and diligence in such matters, it is not responsible for subsequent defects unless it has had actual or constructive knowledge of such defects, and reasonable opportunity to supply the proper remedy. Constructive knowledge will be implied if defects are obvious to ordinary inspection, or have existed for an unreasonable time. There are separate and distinctive departments in railway service in which employés are engaged in different lines of employment, but in this case it is not necessary to consider questions of law as to the relations of employés engaged in these separate and distinct departments, as all the parties connected with the occurrence causing the injury were engaged in the department for the safe, prompt, and successful operation of the business of the railway company in the transportation of freights and passengers.

There are some differences of decision between the supreme court of this state and the supreme court of the United States as to the complex and unsatisfactory doctrines of fellow servants which have so frequently been subjects of discussion in the courts and in state legislatures. The counsel of plaintiff earnestly insisted that the contract of employment between the plaintiff's intestate and the defendant company was made and the service was rendered in this state, and that the construction of the terms of the contract and the legal implication arising from the employment should be in accordance with the laws of this state, where the cause of action arose. In Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, the court expressly decided that the question is not one of local law, to be settled by the decisions of the highest court of the state in which the cause of action arises; but is one of general law, to be determined by reference to all of the authorities, and a consideration of the principles underlying the relations of master and servant. In Finley v. Railroad Co., 59 Fed. 419, I attempted to distinguish the facts and principles involved in the case on trial from those presented in Railroad Co. v. Baugh, and follow the decision of the supreme court of this state in Mason v. Railroad Co., 111 N. C. 482, 16 S. E. 698. The circuit court of appeals overruled my views of the law of the case. Railroad Co. v. Finley, 12 C. C. A. 595, 63 Fed. 228. I now feel constrained to strictly observe the

positive decisions of United States appellate courts, clearly expressed in learned and elaborate opinions.

The facts in the case now before us on trial are few and simple, as there is no conflict, and only slight and immaterial diversity, in the testimony. The deceased, at the time the injury was sustained, was not engaged in the actual service of the company at the time and place of his usual employment; and his mode of transportation was controlled by himself and fellow servants under well-known circumstances of danger and hazard. He had gone to Salisbury, to receive payment of his wages, and was detained until about 9 o'clock at night. He was desirous of attending a social party at a place near the railway about five miles distant. Before he started on the hand car, he had made inquiry at the station, and knew that the fast mail train was due at Salisbury, and was behind the schedule time of arrival. In his daily business of repairing the track he was constantly exposed to the danger of passing trains, and well knew the hazard of entering upon the track with a hand car when a fast train was due and expected, and had the right of way. His conduct in going upon the hand car with full knowledge of the peril may well be held to have been a voluntary assumption of the risk of injury. When he saw the headlight of the rapidly approaching mail train, he stopped the hand car, and he and his fellow servants got off in safety, and the others escaped injury. His attempt to remove the hand car from the rails was the proximate cause of the disaster. This attempt was made in obedience to a hasty request or order of the section foreman to "save the hand car." In the face of such obvious and imminent danger he was under no obligation to obey the impulsive order of the foreman. He did not exercise reasonable care and caution to secure safety, and his hazardous attempt, under the circumstances, may well be held to be contributory negligence. Even if he thought that he was bound to obey the order, the act of the section foreman was the negligence of a suitable and competent fellow servant in the same line of employment under a common master. Kirk v. Railroad Co., 94 N. C. 625; Thom v. Pittard, 10 C. C. A. 352, 62 Fed. 232; Coulson v. Leonard, 77 Fed. 538; Railroad Co. v. Keegan, 160 U. S. 259, 16 Sup. Ct. 269.

It was insisted by counsel of plaintiff that the injury was caused by the negligence of the conductor and engineer of the mail train in not ringing the bell at crossings, and running at a greater rate of speed than was allowed by an ordinance of the city of Salisbury. The rule and regulation for ringing the bell at crossings are intended to give notice to persons passing along the highway, and enable them to avoid danger. The right of a railway train to pass over its track is paramount, but persons have a right to pass over crossings made for highways at suitable times and in proper manner, and, if any injury results to a careful and observant traveler by failure to ring the bell of a passing train, the company would be responsible in damages sustained. The ordinance of the city of Salisbury limiting the rate of speed of passing railway trains was intended to guard against danger and injury to citizens pass-

ing along or across the track for their pleasure or business, and not for the protection of railroad employés, who may well be presumed to know their duties and dangers. But, conceding that the conductor and engineer of the mail train were guilty of negligence in the matters mentioned, they were fellow servants of the deceased, engaged in the same common employment of operating the railway, and securing the safe and prompt passage of trains on the track. State and federal courts have made decisions announcing the doctrine that a conductor, having exclusive control of the management of a train, is a vice principal in relation to other employés of the company, subject to his orders, and acting under him on the same train. As to other employés in the operating department of the company who are not under his orders and control, he is a fellow servant in such a sense as exempts the railroad company from liability for an injury caused by his negligence. Mason v. Railroad Co., 114 N. C. 718, 19 S. E. 362; Railroad Co. v. Hambly, 154 U. S. 349, 14 Sup. Ct. 983.

The counsel of plaintiff, in their argument, called the attention of the court to the recent statute of this state changing and modifying the legal doctrines in regard to fellow servants established in the federal courts and some state courts by judicial decisions founded upon the general principles of the common law. They confidently insisted that, as such statute was manifestly remedial in its nature, and conformed in some degree to the law on the subject announced by the supreme court of this state, it should be construed to have a retroactive effect in this case, at least to the extent of carrying into application the principles of the common law as declared by the supreme court of the state as to the relations of fellow servants. The statute may be expedient, just, and salutary in its objects and purposes, and it shows a manifest legislative intent to remedy what was regarded as existing evils arising from extra state judicial decisions; but, as the statute contains no express provision for retrospective operation, I must conclude to observe the general and sound rule for the construction of statutes, and give this state statute only prospective operation. I may well presume that, if the state legislature had intended to make this important statute retroactive, the purpose would have been clearly, directly, and positively expressed in the body of the statute. If the legislature, in express terms, had given this statute a retrospective operation, then questions of law as to its constitutionality would have been presented to the courts. I will not consider such questions further than to say that, in my opinion, a retrospective operation of the statute in this case would clearly and injuriously affect vested rights acquired by contract, and impose new liabilities, which were not in existence, and were not contemplated by the parties, when they entered into the relation of master and servant for the operation of the railway. At the time this cause of action arose the nonresident corporation defendant was entitled by the laws of the United States to have its obligations, duties, and liabilities passed upon in a federal court, and be

determined by the principles of law declared and established by the supreme court of the United States.

Upon careful consideration of the questions of law and fact involved in this case I am of opinion that the defendants are entitled to an instruction to the jury to render a verdict in their favor on the issues submitted to them.

After the opinion of the court was announced, but before the verdict was formally rendered and entered of record, the counsel of plaintiff asked leave to enter of record a nolle prosequi as to the North Carolina Railroad, defendant. In the course of their argument they stated that plaintiff sought no verdict, and would not further prosecute the suit, as to said defendant, but no leave was asked to enter a nolle prosequi of record. The motion was disallowed upon the ground that it was not made in apt time, as the announcement of the opinion of the court in this case was equivalent to a rendered verdict.