# CHARLESTON.

FLANNEGAN *v.* CHESAPEAKE & O. R'Y CO.

Submitted January 23, 1895—Decided April 6, 1895.

1. RAILROAD COMPANIES—FELLOW SERVANTS.
    The first, second and third points of the syllabus, in the case
    of *Haney* v. *Railway Co.* 38 W. Va. 570, approved.

2. RAILROAD COMPANIES—FELLOW SERVANTS—TELEGRAPH OP-
    ERATOR.
    The telegraph operator in charge of a signal station, who has
    control, by means of signal orders, of the running of trains over
    a block section of a railroad, is not the fellow servant of a
    brakeman injured on such block section by reason of such opera-
    tor's negligent management of the running of such trains.

3. RAILROAD COMPANIES—CONTRIBUTORY NEGLIGENCE—BURDEN
    OF PROOF.
    The syllabus in the case of *Comer* v. *Mining Co.* 34 W. Va. 534,
    approved.

SIMMS & ENSLOW for plaintiff in error, cited McKinney
on Fellow Servants, § 124, p. 267, 220, 311; 27 W. Va. 145; 28
W. Va. 610; Bish. Non-Cont. Law. Ch. 32, §§ 636, 665; 30 Minn.
31; 36 W. Va. 418; 18 Southwestern 748; 23 Wis. 668; 15 Lea
(Tenn.) 145; 67 Barbour (N. Y.) 96; 87 N. C. 837; 37 W. Va.
502; 34 W. Va. 260.

T. G. MANN and W. R. THOMPSON for defendant in error,
cited 38 W. Va. 370; 100 U. S. 213; 27 W. Va. 145; 11 W.
Va. 14; 16 W. Va. 307; 25 W. Va. 570; Bishop Non-Cont. Law,
§ 665; 36 W. Va. 397; 28 W. Va. 610; 81 Va. 584.

DENT, JUDGE:

This is a writ of error from the judgment of the Circuit
Court of Fayette county rendered on the 6th day of March,
1894, for the sum of five thousand and twelve dollars and
seventy two cents, in favor of R. E. Flannegan against the

Chesapeake & Ohio Railroad Company, on a demurrer to evidence.

The facts are as follows:   On the 17th day of March, 1892, while the plaintiff was in the employ of the defendant as a brakeman on a freight train, his train became uncoupled in Stretcher's Neck tunnel, and it became his duty to couple it; and, while engaged in the discharge thereof, a passenger train ran into the rear end of the train, and caused the plaintiff's right leg to be cut off near the ankle. The conductor sent the rear brakeman back to flag any approaching train, but whether he discharged this duty properly does not appear in evidence.   The engineer says he did not see the flagman, but heard some one say there was a man in the tunnel. Who said this, it does not appear.   But it does appear that he was on the wrong side of the engine, owing to the curvature of the road, to see the flagman, and also that he was blinded by the smoke so that he could not see a foot ahead of the engine.   The fireman's evidence was not taken, and it must have been he who saw the man in the tunnel.   The rear end of the freight train was about three hundred and fifty feet from the west end of the tunnel when struck, which occurred but a few minutes—an uncertain time—after it became uncoupled.

The trains were run through this tunnel by means of signals known as the "block system;" there being a telegraph station at either end of the tunnel, in charge of an operator, whose duty it was, by signals, to notify trains when to stop, and when and at what rate to proceed.   The operator at the west end gave the passenger train the wrong signal— being that for a clear track—and allowed it to proceed at full speed, when she should have stopped it.   Defendant demurred to the evidence, but the court overruled it, and entered judgment for the plaintiff.   It is now here insisted that the court erred in its judgment, for the reasons, *first* that the operator was a fellow servant with the plaintiff; *second*, that the accident was caused by the failure to flag the passenger train, on the part of the rear brakeman of the freight.

In passing on the first objection the court is asked to review and overrule the case of *Haney* v. *Railway Co.*, 38 W. Va.

570 (18 S. E. Rep. 748) wherein this question has already been determined. The contention is that both the flagman and signal operator are called upon to perform precisely similar duties, the signal stations being simply an additional precaution provided to prevent accidents. The definition of "fellow servants," as defined and settled by recent decisions, is, those "who are so far working together as to be practically co-operating, and to have opportunity to control or influence the conduct of each other, and have no superiority, the one over another" (*Madden* v. *Railway Co.*, 28 W. Va. 619) while it is held that those who act in a superior position, and have the right to direct and control the conduct of others, are not fellow servants of such others, especially in discharge of superior duties. *Riley* v. *Railway Co.*, 27 W. Va. 146; *Core* v. *Railroad Co.*, 38 W. Va. 456 (18 S. E. Rep. 596).

The rear brakeman or flagman on a train is the fellow servant of the front brakeman, for each has his respective, separate, yet dependent duties to perform in the running of the train; and they may influence, and even control each other's conduct, yet they are neither superior to, nor can they control, each other. Yet the flagman occupies a far different relation towards the trainmen of all other trains, for, in giving them warning of the obstruction of the track by the train to which he belongs, he performs a duty delegated to him by the master; and for his failure to discharge it the master is liable, for it is one of the master's personal non-assignable duties to keep the track free from obstructions, for the safety of his employes. So a flagman, in discharging the same duty, acts as a fellow servant to some, and as a superior or master to others, of his co-employes. Two persons who are called upon to perform the same duty, in effect, may occupy a relatively different position to the same employe, in its discharge. For instance, the flagman protects his co-employes by warning the approaching train, while the master, the dispatcher, and the operator render them the same protection by not allowing the train to use the track until it is clear. One stops the train. The other holds it back. The one is a part of the train, while the other belongs to an entirely different department, which has the supervision and

management of all trains, and yet is no part of any train, but is entirely stationary. The one acts for self-protection. The other, being in no personal danger, acts for the safety of others, and the dispatch of his master's business.

In this case the defendant, seeking to discharge its personal duty and provide a safe track, and at the same time facilitate the rapid movement of trains, established the signal station, and placed the operator in charge, with full authority by means of a code of signal orders equally as effective as any other kind could possibly be, to control the running of all trains over this block; and all trainmen, of every train, were under absolute rule to watch for and obey her orders before they dare enter upon the block. If she had been attentive to her duties, she must have known the block was occupied and obstructed, and her knowledge was the knowledge of the master; yet, in the face of that fact, she negligently gives a peremptory signal for the train to proceed. In what way could she possibly be the fellow servant of the trainmen, who are entirely at her command and who can neither influence or control her independent actions? She is as much the master of her section block as the master is of the whole road. In *Lewis* v. *Seifert,* 116 Pa. St. 647 (11 Atl. 514) it is held: "The master owes to every employe the duty of providing a reasonably safe place in which to work. This is a direct, personal and absolute obligation; and while the master may delegate these duties to an agent, such agent stands in the place of the principal, and the latter is responsible for the acts of the agent. And where the master or superior places the entire charge of his business, or a distinct branch of it, in the hands of an agent, or subordinate, exercising no discretion or oversight of his own, the master is held liable for the negligence of such agent or subordinate." *Mullan* v. *Steamship Co.,* 78 Pa. St. 25; *Railroad Co.* v. *Bell,* 112 Pa. St. 400 (4 Atl. 50). "It would be a monstrous doctrine to hold that a railroad company could frame such schedules as would inevitably, or even probably, result in collisions and loss of life. This is a personal, positive duty; and, while a corporation is compelled to act through agents, yet the agents, in performing duties of this character, stand in the

place of, and represent the principal. In other words they are
vice principals." *Lewis* v. *Seifert,* 116 Pa. St. 647 (11 Atl.
514). In the case of *Railway Co.* v. *Salmon,* it is said:
"Higher officers, agents or servants can not, with any degree
of propriety, be termed fellow servants with the other em-
ployes, who do not possess any such extensive powers, and
who have no choice but to obey such superior officers or ser-
vants. Such higher officers, agents or servants must be
deemed in all cases, when they act within the scope of their
authority, to act for their principal, in the place of their
principal, and in fact to be the principal." 14 Kan. 524;
*Darrigan* v. *Railroad Co..* 52 Conn. 285. A volume might be
written on this subject, and numerous authorities cited for
and against the rule of vice principal, as propounded in the
case of *Haney* v. *Railway Co., supra;* but such rule has be-
come too firmly established in this state to be departed from
now, and must be carried out to its legitimate results, until
abrogated or altered by legislation. It undoubtedly bears
severely on corporations, but its object is the safety and
preservation of life and limb.

The doctrine as recognized and enforced in this state, is
that it is the personal and non-assignable duty of the master,
*first,* to exercise reasonable care in providing and keeping
in repair suitable machinery, and all necessary appliances,
including a safe place to labor; *second,* to exercise a like care
to provide and retain suitable servants for each depart-
ment of service; *third,* to establish, conform to, and enforce
compliance with, proper rules and regulations. These are
the superior duties, for the proper performance of which the
master is responsible, whether he intrust them to a depart-
ment, or any employe, of any grade, and the neglect of which
by the agent or agency to which they are intrusted renders
the master liable to any one injured by reason of such neg-
lect, against whom and to whom contributory negligence
can not be shown or imputed, from his own act or the act of
a fellow servant, whether it be of commission or omission.
*Daniel's Adm'r* v. *Railway Co.,* 36 W. Va. 397 (15 S. E. Rep.
162); *Cooper* v. *Railway Co.,* 24 W. Va. 37; and other cases
heretofore cited; also, *Schroeder* v. *Railway Co.,* 108 Mo. 323

(18 S. W. Rep. 1094); *Foster* v. *Railway Co.,* 115 Mo.. 165 (21 S. W. Rep. 916). The decisions of many jurisdictions are not in line with our decisions on this subject. 7 Am. & Eng. Law 821 (tit. "Fellow Servants"). The rule of *stare decisis* applies with impregnable force in this instance, and from which there is no way of escape, even if the court were so inclined, unless by an utter and reprehensible disregard of all precedent.

Defendant insists, even if this be true, that the plaintiff is not entitled to recover, for the reason that his fellow servant, the flagman, failed to do his duty, and that therefore, contributory negligence is imputable to the plaintiff. The question at once presents itself as to the burden of proving neglect or non-neglect of duty on the part of the flagman. In the case of *Comer* v. *Mining Co.,* 34 W. Va. 534 (12 S. E. Rep. 476) Judge Brannon propounds the law, as settled by repeated decisions of this Court, as follows, to wit: "After the plaintiff has met this requirement by showing negligence of the defendant causing him injury, and not until then, the plaintiff may rest until the defendant answer it. The defendant may meet a case satisfactorily proven on the part of the plaintiff by showing contributory negligence on the part of the plaintiff as the proximate cause of the injury, but the burden of showing contributory negligence rests on the defendant." If the plaintiff's evidence shows contributory negligence, this is proof sufficient to defeat a recovery. *Riley* v. *Railway Co.,* 27 W. Va. 146; *Sheff* v. *City of Huntington,* 16 W. Va. 316; *Hesser* v. *Town of Grafton,* 33 W.Va. 548 (11 S. E. Rep. 211). Wherefore, we are required to determine whether the evidence justifies the inference of contributory negligence. If it is a matter of doubt, it must be resolved in favor of the demurree. The conductor of the freight testifies that he directed the rear brakeman to flag. The engineer of the passenger train says he saw no flagman, but some one informed him there was a man in the end of the tunnel. Owing to the curvature of the track, and the dense smoke, the engineer was not in position to see the flagman; and having been notified that the block was clear, by the signal given, he was not on the lookout, and had on

a full head of steam, and was running rapidly. The evidence of the fireman, who, if not busy in the performance of other duties, could have seen the flagman, is not taken, and neither is the evidence of the flagman. The time elapsed between the uncoupling of the train and the collision is very uncertain. The defendant could have made these questions certain, either for or against itself, by the evidence of the fireman and flagman; and the presumption arises that the evidence, if introduced, would have been adverse to the defendant, or it would not have been withheld. *Trust Co.* v. *McClellan*, 40 W. Va. 405 (21 S. E. Rep. 1025). On the demurrer to the evidence, the negligence of the defendant having been fully established, and the question of contributory negligence being left in an uncertain and doubtful condition, the plaintiff must prevail, as there is no obligation on him to prove that neither himself nor any of his co-servants were guilty of any fault or omission which might have been the proximate cause of the injury. The court can not infer such default from the absence of any, or a doubtful state of evidence relating thereto. *Comer* v. *Mining Co., supra.* Where there is a grave doubt which of two inferences should be deduced, the court will adopt the one most favorable to the plaintiff, as the demurree. *Franklin* v. *Geho*, 30 W. Va. 27 (3 S. E. Rep. 168); *Schwarzbach* v. *Union*, 25 W. Va. 642; *Miller* v. *Insurance Co.*, 8 W. Va. 515; *Ware* v. *Stephenson*, 10 Leigh 164.

The Circuit Court having correctly determined the demurrer to evidence in favor of the plaintiff, the judgment is affirmed.