# CHARLESTON.

## JACKSON v. NORFOLK & W. R. CO.

(DENT, JUDGE, *dissenting.*)

Submitted January 25, 1897—Decided April 21, 1897.

1. MASTER AND SERVANT—*Fellow Servants—Master's Liability.*
   The test whether a master is liable to one servant for the negligence of another servant is the character of a negligent act. If it be in the doing of an act incumbent on the master as a duty of the master to the servant, the master is liable; otherwise not. (p. 382.)

2. MASTER AND SERVANT—*Fellow Servants—Master's Liability.*
   A master's liability to one servant for the negligence of another is not dependent on the grade of the servants, nor on the fact that one has authority over the other, but on the character of the negligent act. (p. 384.)

3. RAILROADS—*Trainmen—Fellow Servants—Vice Principal.*
   A conductor is a fellow servant with a brakeman and other servants on a train, not a vice principal. (p. 392.)

4. MASTER AND SERVANT—*Fellow Servants—Negligence.*
   All servants engaged in the common service of the same master in conducting and carrying on the same general business, in which the usual instrumentalities are employed, are fellow servants. A proper test of this rule is whether the negligence of the one is likely to occur and inflict injury on the other. (p. 393.)

5. MASTER AND SERVANT—*Master's Liability—Fellow Servants—Negligence.*
   If a vice principal, in the particular act in which his negligence occurs, is not in the line of his duty, but performing an act in the line of one who would be a fellow servant with the injured servant, the master is not liable for the negligence of the vice principal, as he is, as to this act, a fellow servant with the injured one. (p. 397.)

Error to Circuit Court, Mercer county.

Action by Murray T. Jackson against the Norfolk and Western Railroad Company. Judgment for plaintiff, and defendant brings error.

*Reversed.*

A. W. REYNOLDS and JOHNSON & HALE, for plaintiff in error.

DOUGLASS & McNUTT, for defendant.

BRANNON, JUDGE:

Jackson was a brakeman in the service of the Norfolk & Western Railroad Company, and was on a freight train with Gilbert as conductor. A train was being backed so as to couple it to some cars. Gilbert was standing on top of the rear car of the train that was backing, and an unsuccessful effort was made to couple the cars, and the train was drawn forward preparatory to a second attempt, and Gilbert waved the engineer to back up the car; and Jackson, seeing this, attempted to jump back, and in so doing his arm was caught between the bumpers and crushed, rendering its amputation necessary. Jackson sued the company, recovered judgment, and it sued out this writ of error. The case involves the question whether Gilbert, the conductor, and Jackson, the brakeman, were fellow servants, so as to exempt the company from liability for the alleged negligent act of the conductor in improperly calling the train back when he did.

The defendant's counsel have filed briefs, very lucid and able, in which they ask us to review this subject of fellow-servantcy (to coin a word to express the idea in one word). By "fellow-servantcy" we mean that where there are two servants or employes of a common master or employer, and one of them, from the negligent act of the other, receives injury, the master is not liable for the same, because, when a servant enters the service of a master, he assumes and runs the risks and dangers incident to the service, and it is unreasonable that he should call on the master to make good to him all damages that may befall him from the acts of any and of all fellow servants in the employ of the master. This doctrine originated in South Carolina in 1841, and was followed in Massachusetts in

1842, and was first held in England in 1850. *Murray* v.
*Railroad Co.* (S. C.) 36 Am. Dec. 268, and full note.   The
process of the evolution of this doctrine of fellow-servantcy
has been a remarkable one, in the fact that it has engen-
dered a discussion in all the courts of the land on frequent
occasions, and has caused a woeful conflict of authority in
innumerable cases; and he who undertakes to examine it
will be wearied in mind, and almost hopeless of extracting
from text-books and decisions any certain, definite rule
upon the subject.   The difficult question is, who are fellow
servants?   Necessity calls for some test or rule generally
applicable in the multitudinous cases everywhere; and a
principle of justice here presents itself, furnishing that
rule,—putting on the master liability when he should bear
it, and leaving with the servant misfortune when he should
bear it.   That principle logically says that we must look
at the act negligently done, causing the injury, and, if the
performance of that act is a duty which the master is re-
quired by law to do properly, then he is liable, whether
he negligently do the act himself, or through another as
his servant; but if it is not an act of duty imposed by law
upon the master, but one purely the duty of another ser-
vant to do properly, both for the benefit of his master and
of his fellow servant, the master is not liable.   I repeat
that it depends on the character of the act negligently
done.   Is it a duty of the master to the servant?   We
must therefore see what duties the master owes to the ser-
vant.   These duties are well summed up according to the
received law in *Madden* v. *Railroad Co.*, 28 W. Va. 617,
as follows: "FIRST. To provide safe and suitable ma-
chinery and appliances for the business.   This includes
the exercise of reasonable care in furnishing such appl-
ances, and the exercise of like care in keeping the same in
repair and making proper inspections and tests.   Second.
To exercise like care in providing and retaining sufficient
and suitable servants for the business.   Third. To estab-
lish proper rules and regulations for the service, and,
having adopted such, to conform to them.   All the fore-
going duties, it will be observed, are included in the one
general duty of the master to provide a safe plant.   The
law is well settled that the master is not required to be a
guarantor or insurer in this behalf, but is only required to

employ reasonable and ordinary care in selecting what he requires, and is necessary for his business." I will add that he must furnish a safe place in which his servant is to work.

The doing of these things is a duty of the master to the servant for the latter's safety. The master can either perform these duties personally, or he may delegate their performance to some one else, whom the books call "vice principal," because he stands, as to these duties, in the place of his master; but if either fails in the performance of duty in any of these respects, and damage results to a servant, the master must answer. If, however, the damaging negligent act is not one of the things which rest on the master as a duty to the servant, it is the act purely of a fellow servant, and the injured servant must look to him, not to the master. These duties falling on the master to perform are called in the law books "non-assignable duties," because he owes them to the servant, and he can not assign them to another to perform, and exempt himself from liability for their misperformance. These duties are sometimes spoken of as duties in construction, preparation, and preservation, as contrasted with mere work of operation. For instance, the construction of the railroad or other work, the preparation of machinery and implements to be used in the business, the preservation of the track or working place, or machinery and appliances, in proper, safe condition, and the selection of proper servants to work. The master having well done his duty in these things, their handling and use in the prosecution of the work designed is a work of mere operation, and this work the servants must perform well, in the interest of their master and fellow servants; and if one fails to do so, and injures a fellow servant, the master is not liable, since he can not always stand by and watch the servant in his every act in the carrying on or operation of the business, and the law, of necessity, permits him to commit this work of mere operation to other hands. To illustrate: The employer must furnish a good wagon, railroad car or brake, or mowing machine, and failing herein, to the injury of his employe using them in ignorance of deficiency, he must repair the injury; but, having them, if one servant by their careless use injure a fellow servant, the master is not to

repair his injury. For the misuse of these things by a servant the master would be liable to strangers, but not to another servant, because when he entered upon the service he assumed the risks and dangers that might occur in the business,—among them, the danger that he may receive injuries from the negligence of a fellow servant. It would be unjust to make the master an insurer of every servant against the negligence of every act of other servants, in many instances numbering thousands, working over hundreds of miles, or a wide area of territory, the master necessarily himself absent. What man or corporation engaged in any business could endure such danger and burden? It would be a crying injustice to the farmer, merchant, coal operator, railroad or steamboat company,—to all business operators. The law is severe enough, in holding employers responsible for good track, machinery, *etc.*, as above stated, without making them guarantors for the acts of every servant. You can not make the master liable for an act of mere operation, no matter by what servant done. You cannot exempt him for an act not one of mere operation, but of his personal duty, though done by any servant. If he does the act in person, he is liable, regardless of the character of the act. Whart. Neg. § 205; Beach, Contrib. Neg. §§ 302, 303.

This is the rule of reason and justice. It is supported by the great volume of authority in text writers and decisions. But another rule has been followed to a very considable extent, known as the "rule of superior servants; that is, where the negligent servant in grade of employment is superior to the injured one, or where one servant is placed by the master in a position of subordination, and subject to the orders and control of another in such a way and to such an extent that the servant so placed in control may reasonably be regarded as representing the master as his *alter ego* or vice principal, and the inferior servant is injured by the negligence of the superior servant, the master is liable. This rule, as McKinney, Fel. Serv. § 43, says, has produced endless confusion, and is favored by many text writers, and adopted by the Southern and Western courts, and by the United States Supreme Court; but, on the other hand, the entire doctrine of the liability of the master for a superior servant's tort to an inferior is repu-

diated by courts whose number and authority outweigh those favoring the doctrine. But, since Mr. McKinney wrote, that rule has been overthrown by a change in the Supreme Court of the United States, whose decisions in the case of *Railway Co. v. Ross*, 112 U. S. 377 (5 Sup. Ct. 184), has been the parent of much erroneous decision upon this subject. That case held that a conductor was a vice principal, standing in the shoes of the master, because given authority and control over his train, and of other employes on it, to direct and order them, and was thus a superior servant, clothed with the authority of the master, and that his negligent act, injuring other servants, rendered the master liable, because he was a superior fellow servant. This doctrine did not render the question of the master's liability or nonliability dependent on the true principle (that is, an inquiry whether the act performed by the conductor was one of duty to other servants, or one of mere conduct or operation of the business), but from the simple fact that he controlled the train, and could direct and order other servants, made the master liable, although it is plain that that conductor did only his part in the mere management and operation of the train, along with brakemen and other trainmen. It made the grade or control of the conductor, because in some respects superior, the controlling element. Mr. Bailey, in his work on Master's Liability for Injury to Servant (page 239), says that in the Ross Case a wide departure from the true principle was made, and that perhaps no decision of that court created greater surprise in the profession; that its influence had been wide,—many states, after years of uncertainty adopting its rule as the correct solution of a vexed problem,—and that it was prophesied by many jurists and lawyers that this doctrine would be temporary and of short duration; that it was rendered by a divided court (five to four), and the reasoning of the court not satisfactory. That prophecy of its short duration was not long in being realized. In *Railroad Co. v. Baugh*, 149 U. S. 368 (13 Sup. Ct. 914), it was virtually repudiated, being limited to the particular facts of the *Ross Case*, and held not a rule of general application. The court said that: "So far as the matter of the master's exemption from liability depends upon whether the negligence is one of the

ordinary risks of employment, and thus assumed by the
employe, it includes all co-workers to the same end,
whether in control or not.   But if the fact that the risk is
or is not obvious does not control, what test or rule is there
which determines?   Rightfully, this : There must be some
personal wrong on the part of the master,—some breach of
positive duty on his part.   If he discharges all that may
be called positive duty, and is himself guilty of no neglect,
it would seem as though he was absolved from all respon-
sibility, and that the party who caused the injury should be
himself alone responsible." The court quotes with approval
the opinion of the supreme court of Kansas, as furnishing
the true rule :   "A master assumes the duty towards his
servant of exercising reasonable care and diligence to pro-
vide the servant with a reasonably safe place at which to
work, with reasonably safe machinery, tools, and imple-
ments to work with, with reasonably safe materials to
work upon, and with suitable and competent fellow serv-
ants to work with him ; and, when the master has properly
discharged these duties, then, at common-law, the servant
assumes all the risks and hazards incident to or attendant
upon the exercise of the particular employment or the per-
formance of the particular work, including those risks and
hazards resulting from the possible negligence and care-
lessness of his fellow servants and co-employes.   And at
common-law, whenever the master delegates to any officer,
servant, agent, or employe, high or low, the performance
of any of the duties above mentioned, which really de-
volve upon the master himself, then such officer, servant,
agent, or employe, stands in the place of the master, and
becomes a substitute for the master, and the master is lia-
ble for his acts or his negligence to the same extent as
though the master himself had performed the acts or was
guilty of the negligence.   But at common-law, where the
master himself has performed his duty, the master is not
liable to any one of his servants for the acts or negligence
of any mere fellow servant or co-employe of such servant,
where the fellow servant or co-employe does not sustain
this representative relation to the master."   The court
said :   "*Prima facie*, all who enter into the employ of a
single master are engaged in a common service, and are
fellow servants, and some other line of demarkation than

that of control must exist, to destroy the relation of fellow servants."

In the later case of *Railroad Co. v. Hambly*, 154 U. S. 349 (14 Sup. Ct. 983), a day laborer of the company, working on a section force, was held a fellow servant of an engineer and conductor of a passenger train, and it was held that that laborer could not make the company liable for the negligence of the engineer or conductor. Justice Brown there shows that, as between laborers upon a railroad track, and the conductor or other employes of a moving train, the courts of most of the states regard them as fellow servants, but in some otherwise. This case is contrary to the *Ross Case*, and overrules it. In the later case of *Railroad Co. v. Keegan*, 160 U. S. 259, (16 Sup. Ct. 269), it was held that one of a force of men in the service of a railroad company, employed in coupling and uncoupling cars under the orders of one of them, receiving an injury from the negligence of the boss, could not hold the company liable, because the boss and he were fellow servants. The court repeats the rule that the rightful test is whether "the negligent act constituted a breach of positive duty owing by the master, such as that of taking fair, reasonable precautions to surround his employes with fit and careful coworkers, and furnishing a reasonably safe place to work, and reasonably safe tools and machinery, thus making the question of liability of an employer for an injury to his employe turn rather on the character of the alleged negligent act, than on the relations of the employes to each other, so that, if the act is one done in the discharge of some positive duty of the master to the servant, then negligence in the act is the negligence of the master, but, if it be not one in the discharge of such positive duty, then there should be some personal wrong on the part of the employer before he is liable therefor." And in the still later case of *Railroad Co. v. Peterson*, 162 U. S. 346, (16 Sup. Ct. 843), the court carefully and pointedly reviews this subject, and lays down the doctrine that a foreman of a gang of laborers, having in charge the superintendence of the gang in working, with power to hire and discharge hands, and exclusive charge of their direction and management in their employment, is a fellow servant, in fact and law, with others of the gang, and that the company is not

liable for an injury received by one of them from the neg-
ligence of the foreman, because of their fellow-servantcy.
The court went on to define the duties of a railroad com-
pany, as master, towards its employes, and says that : "The
general rule is that those entering into the service of a
common master become thereby engaged in a common
service, and are fellow servants, and *prima facie* the com-
mon master is not liable for the negligence of one of his
servants which has resulted in an injury to a fellow serv-
ant. There are, however, some duties which a master
owes, as such, to a servant entering his employment. He
owes the duty to protect such servant with a reasonably
safe place to work in, having reference to the character of
the employment in which the servant is engaged. He also
owes the duty of providing reasonably safe tools, appli-
ances, and machinery for the accomplishment of the work
necessary to be done. He must exercise proper diligence
in the employment of reasonably safe and competent men
to perform their respective duties, and it has been held in
many states that the master owes the further duty of
adopting and promulgating safe and proper rules for the
conduct of his business, including the government of the
machinery, and the running of trains on a railroad track.
If the master be neglectful in any of these matters, it is a
neglect of a duty which he personally owes to his em-
ployes, and, if the employes suffer damage on account
thereof, the master is liable. If, instead of personally
performing these obligations, the master engages another
to do them for him, he is liable for the neglect of that
other, which in such case is not the neglect of a fellow
servant, no matter what his position as to other matters,
but is the neglect of the master to do those things which it
is the duty of the master to perform as such. In addition
to the liability of the master for his neglect to perform
these duties, there has been laid upon him by some courts
a further liability for the neglect of one of his servants in
charge of a separate departmant or branch of business,
whereby another of his employes has been injured, even
though the neglect was not of that character which the
master owed, in his capacity as master, to the servant who
was injured. In such case it has been held that the neg-
lect of the superior officer or agent of the master was the

neglect of the master, and was not that of the co-employe, and hence that the servant, who was a subordinate in the department of the officer, could recover against the common master for the injuries sustained by him under such circumstances." The syllabus in that case says: "The previous cases in this court on this subject, examined, are found to determine the following points as to the liability of a railroad company for injuries to an employe alleged to have been caused by the negligence of another employe while the injured person was in the performance of his ordinary duties: (1) That the mere superiority of the negligent employe in position, and in the power to give orders to subordinates, is not a ground for such liability. (2) That, in order to form an exception to the general law of nonliability, the person whose neglect caused the injury must be one who was clothed with the control and management of a distinct department, and not of a mere separate piece of work in one of the branches of service in a department. (3) That when the business of the master is of such great and diversified extent that it naturally and necessarily separates itself into departments of service, the persons placed by the master in charge of these separate branches and departments, and given control therein, may be considered, with reference to employes under them, vice principals and representatives of the master, as fully as if the entire business of the master were placed by him under one superintendent." On these principles, in the case of *Railroad Co.* v. *Charless,* 162 U. S. 356, (16 Sup. Ct. 848), it was held that a laborer in a gang riding in a hand car over the road to inspect the road, injured by a collision with a freight train, could not recover from the company for negligence of its servants on the freight train to give signals of its approach, because those servants were fellow servants; nor could he recover for negligence of the foreman in running the hand car at too high a rate of speed, because he, too, was a fellow servant with the injured party. Thus, the supreme court has recalled its departure from the true rule, and now leads in the announcement of the true rule in these repeated latest decisions. That the *Ross Case* was overruled in the *Baugh Case* is admitted in the *Baugh Case,* in the dissenting opinion of Justice Field, who wrote the opinion in the *Ross Case.* It must

not be supposed that the supreme court in these cases was acting on the legal decisions in the states from which the cases came; for in the *Baugh Case* it is expressly ruled that it was a question of general, not local, law, and the principles enunciated were those of general, and not local, law.

After completing, but before delivery of, this opinion, I discover that on the 15th of February, 1897, the United States Supreme Court, in *Oakes* v. *Mase*, 17 Sup. Ct. 345, held that "an engineer on one train is a fellow servant with a conductor on another on same road"; citing the four cases I cite above, thus adhering to their doctrine. Only one judge dissented. I believe this doctrine, as an original proposition, correct. However, if the highest court in the land, upon this question, arising not in one state, but daily in every state, had not changed its rulings, as our former cases followed it, I should not favor a departure from those cases. But how can we stand out against that court in its latest position upon a question in which there ought to be uniformity of decision, approved as it is by the most numerous and best text writers? The federal courts in this State will follow it as they are doing elsewhere. *Railroad Co.* v. *Brown*, 20 C. C. A. 147, (73 Fed. 970); *Balch* v. *Hass*, 20 C. C. A. 151, (73 Fed. 974), both C. A. cases. Why, in the same state, shall we have clashing rulings on exactly the same subject? I have just met with the opinion by Judge Goff in the Virginia case of *Thom* v. *Pittard*, 8 U. S. App. 597 (10 C. C. A. 352), and (62 Fed. 232,) holding that a foreman engaged on a work train in hauling materials for repair of road, who acted as conductor, and was foreman of the gang of laborers under him, and a section master having men under him, employed in keeping the roadbed and track in order, and who used for that purpose a portion of the load on the work train, were fellow servants with the laborers under them. I refer to Judge Goff's opinion, as harmonizing in substance and spirit with the principles above stated by me. See Mr. McKinney's note of satisfaction at the change of position by the supreme court in *Railroad Co.* v. *Baugh*, 54 Am. & Eng. R. Cas. 364 (s. c. 13 Sup. Ct. 914). That latest and invaluable work on railroads issued this year, in four volumes (Elliott on Railroads), in section 1330, criticises the *Ross Case* as having brought error into some

of the decisions, and in section 1333, having since seen the decisions in the *Peterson Case* and the *Charless. Case*, says that they "deny much of the doctrine asserted in the *Ross Case*, and assert a rule which is in line with that asserted by most of the state courts." Elliott says in section 1276 that if the duty be of a nature that is assignable,—one of mere operation, not resting upon the master,—he is not liable. In other words, the right to assign or delegate a duty conclusively implies that the duty is not that of the master, in such a sense as to render him responsible for negligence in its performance. The supreme court of Virginia has recently reviewed all the Virginia cases on this subject, and follows the supreme court in the *Hambly Case*, cited above. In *Railroad Co. v. Nuckols*, 91 Va. 193 (21 S. E. 342), holding that the liability of the master does not depend upon gradations in employment, unless the superiority of the person causing the injury was such as to put him in the category of principal or vice principal, and laying down as the true rule that above stated in this opinion, holding that the test is that where the departments in which the negligent and the injured persons labor are so far separated from each other as to exclude the probability of contact, and of danger from the negligent performance of their duties by employes of the different departments, then the servant is not taken to have contemplated such danger from the other servant in another department, as one incident to his employment, when he entered the service, but that the mere fact that the servant injured is in another department of service does not render the master liable. The rule above stated has the approval of other great text writers: Bish. Noncont. Law, §§ 665, 671–673. Judge Dillon gives it his emphatic approval, as the only true rule, in 24 Am. Law Rev. 175, quoted in opinion in *Ell* v. *Railroad Co.* (N. D.) 48 N. W. 222. That case holds the rule that the character of the act, not the grade of the servant, governs. The opinion by Corliss, C. J., is a very strong and clear discussion of the subject. *Murray* v. *Railroad* Co., 36 Am. Dec. 279; *Coke Co. v. Peterson* (Ind. Sup.) 35 N. E. 7. See further citations below.

Now let us turn to the West Virginia cases. So far as they define the general rule, I think they are in har-

mony therewith, though in some instances the rule has been misapplied, in making persons vice principals who were only fellow servants. *Riley* v. *Railroad Co.*, 27 W. Va. 145, recognizes that, to make the master liable for the act of his servant, that act must relate to the discharge of some duty which the master owes to the employe. So, in point 3 of *Madden* v. *Railroad Co.*, 28 W. Va. 610. So, as I understand it, is the general principle stated in *Daniels* v. *Railroad Co.*, 36 W. Va. 397 · (15 S. E. 162); *Core* v. *Railroad Co.*, 38 W. Va. 456 (18 S. E. 596); *Flannegan* v. *Railroad Co.*, 40 W. Va. 440 (21 S. E. 1028). Such is the general principle, but it is often difficult to apply,—to say whether the particular act is one of the duties placed upon the master for the benefit of his servants, and so one that is non-assignable, for which the master is still liable, or one of mere operation. · Now, our cases of *Madden* v. *Railroad Co.*, *supra*, *Daniels* v. *Railroad Co.*, *supra*, and *Haney* v. *Railroad Co.* 38 W. Va. 570 (18 S. E. 748), holding that a conductor is a superior servant or vice principal, and not a fellow servant with other employes, spring from the *Ross Case*, and, I am compelled to say, are not sound in principle. I have always entertained, myself, a different opinion, but thought the *Madden Case* governed us. The prop has fallen from under those decisions. We ought to be right. The supreme court has reversed itself. Why should not we do so? It is not a rule of property. Why is not a conductor a fellow servant with other servants on that or any other train? He is not the head of another department nor working in another separate department, so as to enable us to say that the injured servant did not contemplate the negligence of the conductor as one of the dangers which he might have to encounter. The conductor is simply an operative. He simply carries on the work of actual operation. He uses the track and cars provided by the master for the transaction of his business, just as the engineer and firemen use the engine and the brakemen use the brakes. His functions are purely those of mere operation. As stated above, he is not in another, separate department from other servants on his train, nor performing the work of a separate department, but simply a particular piece of work in the operating department. His mere superiority or power of control in some respects

cannot take him out of that classification or category. Most eminent authority positively settles this. The Supreme Court of the United States so held. Would you say that when the farmer, mine owner, or lumberman sends a lot of hands upon his work in charge of a foreman or boss or overseer,—call him as you may,—he is to indemnify them against the every mistake of the foreman while doing the work? That would make every business very perilous. If not in such case, why should a railroad company be made to indemnify when it sends a lot of trainmen to run its train, under the control of a conductor? It must employ a competent conductor, but not be required to insure against his error of judgment. You can not do so, unless you change the rule laid down in this Court and elsewhere, —that it is the character of the act, not the grade or control of the foreman, that ought to guide. I think an excellent test is put in the last clause of the syllabus in *Valtez* v. *Railway Co.*, 85 Ill. 500: "Those who are engaged in the service of the same master, in carrying on and conducting the same general business, in which the usual instrumentalities are employed, may be justly called 'fellow servants.' A proper test of this relation is whether the negligence of the one is likely to inflict injury on another." This means that, if one may chance to be hurt from the negligence of another, he is deemed to have contemplated and risked that chance when he entered service, and they are fellow servants. May not a brakeman assume a chance of danger from mistakes of a conductor? The latest railroad law work (Elliott, R. R. § 1330) says: "There is comparatively very little conflict upon the question as to whether trainmen engaged in operating the same train are fellow servants, the very decided weight of authority holding them to be fellow servants. This seems to us the only rule that can be defended on principle; for such employes are, in the strictest sense, engaged in the service of a common master, their service is of the same general character, and the object of the service is a common one. The doctrine declared in a case decided by the Supreme Court of the United States has created some conflict, and, as we venture to say, brought error into some of the decisions, but the case to which we refer can not be regarded as expressing the rule which now prevails in the

federal courts. We can not perceive how the doctrine which declares that employes of the same train are not fellow servants can be upheld without violating the principle that the details of operating a railroad do not pertain to, or form part of, the master's duty. Under the rule which we have stated, conductors, engineers, firemen, brakeman, and baggage masters of the same train are fellow servants. There are cases which apply what is sometimes called the 'doctrine of subordination' to trainmen performing service on the same train. Conductors are usually considered, in the line of decisions just referred to, as superiors, and not as fellow servants; for which heresy the *Ross Case*, so often referred to, is, to a great extent, responsible." In the section of Elliott afterwards written, it is shown that the *Ross Case* has been overruled, as above stated. Elliott, in section 1331, says: "It seems to us that the rule must be the same whether the trainmen are engaged on the same train or on different trains. There is, as we think, no valid reason for discriminating between cases where the employes are engaged in operating the same train, and cases where they are engaged in operating different trains. In both cases they are employed in the same line of service, and by a common master. The weight of authority preponderates very strongly in favor of· the doctrine that trainmen, although employed on different trains, are fellow servants, but there is some conflict of authority upon the question." I cite the case decided in 1895, of *Wooden* v. *Railroad Co.*, 147 N. Y. 508 (42 N. E. 199), holding conductors and other trainmen to be fellow servants. Note, 7 Am. & Eng. Enc. Law, 870; also, *Dow* v. *Railway Co.*, 8 Kan. 642; *Jenkins* v. *Railroad Co.* (S. C.) 18 S. E. 182; *Elevator Co.* v. *Neal*, 65 Md. 438, (5 Atl. 338); *Knahtla* v. *Railway Co.*, 21 Or. 136, (27 Pac. 91), and cases cited page 148, 21 Or., and page 95, 27 Pac.; ·*Heine* v. *Railway Co.*, 58 Wis. 525 (17 N. W. 420).

I therefore put it as sound law that, as the question of fellow-servantcy depends on the character of the act, the grade or rank of the negligent and injured servant, or whether one had authority or control over the other, is immaterial, and that this rule is supported by' the better reason, and the latest and best authority of text writers and court decisions. In ·addition to those cited above, I

cite 3 Wood, Ry. Law, 1788; 3 Elliott, R. R. § 1316; Wood, Mast. & Serv. § 448; Story, Ag. § 453; Webb, Poll. Torts, 121; 7 Am. & Eng. Enc. Law, 834; *Hankins* v. *Railroad*, 142 N. Y. 416 (37 N. E. 466); *McElligott* v. *Randolph* (Conn.), 22 Atl. 1094; *Railway Co.* v. *Smith* (Tex. Sup.), 13 S. W. 562; *Harrison* v. *Railroad Co.* (Mich.), 44 N. W. 1034; *Coke Co.* v. *Peterson* (Ind. Sup.), 35 N. E. 7; *Railway Co.* v. *Smith*, 59 Ala. 245; *Railroad Co.* v. *Thomas*, 42 Ala. 672; *Jenkins* v. *Railroad Co.* (S. C.), 18 S. E. 182; Mechem, Ag. § 668; *Railroad Co.* v. *Donnelly*, 88 Va. 853 (14 S. E. 692); *Avery* v. *Meek*, 96 Ky. 192 (28 S. W. 337). I quote in this connection, as very strong, the language of the eminent Judge Cooley in Cooley, Torts, 639: "In some quarters a strong disposition has been manifested to hold the rule [of fellow service] not applicable to the case of a servant who at the time of the injury was under the general direction and control of another, who was intrusted with duties of a higher grade, and from whose negligence the injury resulted. But it can not be disputed that the negligence of a servant of one grade is as much one of the risks of the business as the negligence of a servant of any other; and it seems impossible, therefore, to hold that the servant contracts to run the risk of negligent acts or omissions on the part of one class of servants, and not those of another class. Nor, on grounds of public policy, could the distinction be admitted, whether we consider the consequences to the parties to the relation exclusively, or those which affect the public, who, in their dealings with the employer, may be subjected to risks. Sound policy seems to require that the law should make it for the interest of the servant that he should take care not only that he be not himself negligent, but also that any negligence of others in the same employment be properly guarded against by him, so far as he may find it reasonably practicable, and be reported to his employer, if needful; and, in this regard, it can make little difference what is the grade of the negligent servant, except as a superior authority may render the negligence more dangerous."

The supreme court of Indiana in *Coke Co.* v. *Peterson*, 35 N. E. 7, says, as I say myself, that this rule of fellow-servantcy is founded in wisdom, and departure from it

dangerous to the prosperity and perpetuity of enterprises of mining, manufacturing, railroading, and those industries requiring the service of many employes; and departure from it would increase the danger of employes themselves, as it inspires diligence and watchfulness to save themselves and co-laborers, as well as their employers. Abandon the rule, and inducement to care is gone, and each workman has nothing to do but look out for his own safety. This doctrine is indispensable in our days of numberless enterprises, operating with innumerable employes and machines and appliances. This doctrine that where the faulty servant is a superior servant having authority over the injured one arose in Ohio, in *Little Miami R. Co.* v. *Stevens*, 20 Ohio 415. The court became dissatisfied with it in *Railway Co.* v. *Devinney*, 17 Ohio St. 197, and refused an action by a brakeman against the railroad for negligence of a conductor on another train. The dissenting judge said it was a departure from the former decision. He admitted that the rule of the *Little Miami R. Co. Case* was contrary to the rule outside Ohio, "that a servant, without regard to his grade of authority or position, cannot maintain an action against his employer for the fault of a fellow servant." The former case allowed an action by engineer for negligence of the conductor on same train. The dissenting opinion in the *Little Miami R. Co. Case* is very elaborate and strong in support of the true rule. From *Avery* v. *Meek* (Sept., 1893), 96 Ky. 192 (28 S. W. 337), the Kentucky court seems to qualify its former holding by saying (after admitting that the rule in a majority of states is as above given) that one servant cannot recover for negligence of a servant superior in authority unless it be gross,—an unreasonable distinction. It may be that *Allen* v. *Goodwin* (March, 1893), 92 Tenn. 385 (21 S. W. 760), shakes the former rule in that state. 1 Bevin, Neg. 835, states the English rule to be that at common-law "a master is not liable to any servant for any injury which arises from the act or default of any fellow servant, whether that fellow servant be in a position of authority or not." (See note at close of opinion).

For these reasons, I think that Jackson and Gilbert were fellow servants. There is another feature of this case, strengthening the position, though not necessary to its

support, that they were such fellow servants, in this: Suppose we concede that a conductor, in his own line of duty, is a vice principal,—as he is not; yet here he was performing simply the work of a brakeman, in waving to the engineer. Plainly, this was an act of mere operation of the cars by hands,—not a duty of the company. In *Drainage Co.* v. *Fitzgerald* (Colo. Sup.) 43 Pac. 210, the opinion said that: "When the manager or vice principal undertakes work in simple co-operation with other servants, and upon precisely the same footing with them, he becomes for the time being a mere fellow servant with them, acting as such. Thus, for example, a conductor while acting as such in starting or delaying a train, in warning or failing to warn the other train hands, or in any other respect performing the usual duties of a conductor, is not, under the American rule, a fellow servant with a brakeman on the same train. But, when he offers to assist the brakeman in handling his brakes or in coupling cars, he acts only as a fellow servant, such work being no part of the duty of a conductor as such." "If the negligence complained of [that is, the negligence of the vice principal] consists of some act done or omitted by one having such authority which relates to his duties as a co-laborer with those under his control, and which might just as readily have happened with one of them having no such authority, the common master will not be liable." "The better rule, as we extract it from the best reasoned cases, is that for the acts of the vice principal done within the scope of his employment, and such as properly devolve upon the master in his general duty to his servants, the master is liable, while for all such acts as relate to the common employment, and are on a level with the acts of the fellow laborer, except such acts done by the vice principal against the reasonable objection of the injured servant, the master is not responsible. In other words, the test of liability is the character of the act, rather than the relative rank of the servants." See *Ell* v. *Railroad Co.* (N. D.), 48 N. W. 222; Green J., *Criswell* v. *Railway Co.*, 30 W. Va. 814 (6 S. E. 31); *Core* v. *Railroad Co.*, 38 W. Va. 456 (18 S. E. 596); *Rodman* v. *Railroad Co.*, (Mich) 20 N. W. 788; 3 Elliott, R. R. § 1319. This position may not be so clear; for, if the conductor be vice principal,

then the act is as if done by the master in person, and, no matter what the character of that act,—one of mere operation or not,—if done by the master in person, he is liable. So held in *Stone Co.* v. *Kraft*, 31 Ohio St. 289.

It is said in argument that the declaration is bad because it does not negative the idea that the injury emanated from the act of a fellow servant. It charges that the cars were, "by the wrongful and negligent acts of the defendant company, its agents, servants, and employes, wrongfully, carelessly, violently, and negligently precipitated on and against said infant plaintiff." I do not think that the declaration need allege the position of the negligent servant, or show affirmatively that he was not a fellow servant. In some states such would be required, but in this State it is sufficient to charge generally the act as having been negligently done, without negativing the fellow-servantcy, just as it is settled in this State that such a general charge of a negligent act is sufficient, without negativing contributory negligence.

Contributory negligence: This debars the plaintiff from recovering. He says that he was attempting to couple to some cars standing on the track a train composed of an engine and six or seven loaded coal cars, which was being backed up to the standing cars. He says the cars came together without coupling, and did not couple, and he then waved the engineer down, and the train separated from the cars a distance of six feet, and there stood, and that he went in to couple the cars, and that Gilbert, standing on the car of the moving train above him, instead of waiting for Jackson to signal the train to back again, himself signaled it, and brought the train too quickly back, and caught his arm in between the bumpers, and mashed his arm from the wrist to the elbow. Now, Gilbert denies having given any signal, but says Jackson did so. Gilbert and two other witnesses in their evidence substantially show that Jackson signaled the train to back, and that it did not stop before Jackson received his injury. The feature of the case seem to show that Jackson signaled the train, and by carelessness, or want of that great caution and prudence conforming to the usage of brakemen, received the injury. The cars were on a sharp curve. He went between them, on the inside of the curve, thus en-

dangering himself from being pinched by the corners of the cars, whereas he should have gone in, under the practice of brakeman, on the outside of the curve, and the bumpers would there have saved him from any accident, if he had not placed his hand directly between the bumpers, contrary to the rules of brakemen and the plainest principles of self-preservation. Being on the inside of the curve, to avoid being pinched at the corner he would naturally press too close to the bumpers, and the more likely injure himself, while on the other side he could have stood a considerable distance from the bumpers and been safe. But, at any rate, why should he have had his whole forearm directly in front of the bumpers, when, as he and all others show, in coupling the arm should be below those bumbers, simply taking hold of the link, and directing it so as to enter the drawbar of the car. The bumpers are made for the very purpose of bumping against each other, and keeping the cars from coming closer together, and saving the brakeman. He did a thing of manifest danger,—dispensed with the use of the appliances prepared by the employer to save him,—by placing his arm in the very place where it would surely be caught, without call for so doing. At no time, under no circumstances, had he the right or need to put his arm there. A man engaged in such dangerous work is bound to use the most astute caution and care. He was an experienced brakeman. Now, let us discard the idea that Jackson waved the train back, and say that Gilbert did that. It may be said that Jackson was not expecting the conductor to wave the train back, but to give the signal himself, and therefore did not have his arm in the right place. He says that when the cars first came together they would not couple. Then he waved the engine down, and went in to make the coupling, the conductor standing on the car above him, and "as I aimed to make the coupling he [the conductor] waved the engineer back; and I saw him and aimed to jump back, but before I could do so, the cars caught me" (using his own words). Now, the backing train was six feet off. Jackson says he saw the conductor wave the train back. Then he had time to get out, or to properly place his arm and hand under the bumpers, for he and all say that the train had seven loaded coal cars to back up a very steep

grade on reverse curves,—the track slippery (having to sand it), the engine slipping, and the movement very slow. Jackson complains that the conductor waved the train back before he was ready for it; yet he says he saw him wave; and surely he could prepare or get out while this loaded train was starting and going the six feet in its very slow, labored movement. All the evidence shows that the engine could scarcely back its cars up that steep grade and sharp curve. He had timely warning to take his arm away. It should never have been there. Gilbert denies waving the train back, and it looks like Jackson did, because, if he had, we would expect him, after doing so, to be in between the cars to couple them; but, if he had not given the signal, hardly so. Say, however, that the conductor did wave the train back, and that Jackson did not see him, though he says he did; it is scarcely possible that with a lantern, Jackson would not see the train start its movement and come back soon enough to get out of the way, or prepare for it. So we can say that he did not use that care and caution required in such dangerous business. Is it justice, between man and man, to hold the employer liable under such circumstances? Had it not been for the negligence of Jackson in a place calling for the most watchful prudence, the misfortune would not have happened. Reversed and new trial granted.

NOTE BY BRANNON, JUDGE:

Upon the important question of fellow servanty, I add the following late authorities, taking the view above taken: *Denver & C.* v. *Sipes* (Colo.), 47 Pac. 287 (1896); *St. Louis* v. *Needham*, (Ark.) C. C. A., 63 Fed. Rep. 107, full opinion; Bishop Non Contr. Law, sec. 665; *Callan* v. *Bull*, 113 Cal. 593 (1896), holding that while a superintendent is a vice principal as respects suitable appliances which it is the duty of the master to furnish, yet if employes are to construct them out of material furnished them, "all, including superintendent, are fellow servants irrespective of rank as to any defect or negligence in their construction or adjustment, and the master not liable for such defect or negligence"; *Miller* v. *Southern Pac.* (Ore.), 26 Pac. 70. In Dec. 1896, the circuit court of Pa. criticised the *Ross Case* and held the same view which I express above, that it has been practically overruled by the cases I cite. *Coulson* v. *Leonard* 77 Fed. Rep. 538; *McGinty* v. *Attrol*, 155 Mass. 183, holding superintendent and workmen fellow servants. The opinion in *Colo. Coal Co.*

v. *Lamb* says that the late cases in supreme court overrule the *Ross Case.* 6 Colo. Court App. 255.

I see that in *Norfolk & Western R. R. Co.* v. *Honchins* (decided Dec. 2, 1897), the Virginia Supreme Court has, in a clear strong opinion by Caldwell, J., squarely approved our decision in the above case. The U. S. Supreme Court (1897) has reenunciated the same views given in recent decisions above cited. *Mining Co.* v. *Whelan,* 168 U. S. 86 (18 Sup. Ct. 40).

DENT, JUDGE (*dissenting*) :

I am compelled to dissent in this case, to be consistent with the position taken in the case of *Flannegan* v. *Railroad Co.*, 40 W. Va. 440 (21 S. E. 1028), as follows, to wit : "The doctrine, as recognized and enforced in this State, is that it is the personal and non-assignable duty of the master—First, to exercise reasonable care in providing and keeping in repair suitable machinery, and all necessary appliances, including a safe place to labor ; second, to exercise a like care to provide and retain suitable servants for each department of service ; third, to establish, conform to, and enforce compliance with proper rules and regulations. These are the superior duties, for the proper performance of which the master is responsible, whether he entrust them to a department, or any employe of any grade, and the neglect of which by the agent or agency to which they are intrusted renders the master liable to any one injured by reason of such negligence, against whom and to whom contributory negligence cannot be shown or imputed from his own act or the act of a fellow servant, whether it be of commission or omission. *Daniel's Adm'r* v. *Railway Co.*, 36 W. Va. 397 (15 S. E. 162) ; *Cooper* v. *Railway Co.*, 24 W. Va. 37 ; and other cases heretofore cited ; also, *Schroeder* v. *Railway Co.*, 108 Mo. 323 (18 S. W. 1094) ; *Foster* v. *Railway Co.*, 115 Mo. 165 (21 S. W. 916). The decisions of many jurisdictions are not in line with our decisions on this subject. 7 Am. & Eng. Enc. Law, 821, tit. 'Fellow Servants.' The rule of *stare decisis* applies with impregnable force in this instance, and from which there is no way of escape, even if the court were so inclined, unless by an utter and reprehensible disregard of all precedent." The majority of the Court, however, appear to have arrived at a different conclusion, and have determined, in disregard of its former decisions, to start

on the promulgation of an entirely different rule, dependent on the principles of fellow service.

Under the doctrine as heretofore established by this Court, the liability of the master was not determined by the rank or title of the employe or servant, but on the duty that he was called upon to perform or discharge. If such duty was a non-assignable, sometimes called "positive," duty of the master, the master was liable for the servant's negligence, to any person injured thereby; but, if an assignable duty, the master was not liable. So that, in determining whether the servant was for the time being the agent or vice-principal, his rank was not considered; but the duty he was in the act of performing was alone decisive of the question, although it is generally recognized that the duties of the master are more apt to be imposed on those of his servants who hold superiority in rank. It was improper, therefore, to hold that any officer or employe was at all times, by reason of his employment or rank, a vice principal. And it is just as improper to hold that an officer or employe, by virtue of his employment, is at all times the fellow servant with those with whom he is working, whether in a superior or inferior capacity. The main question in every case of negligence was not whether, generally speaking, the servant in fault was the superior or inferior in rank of the injured party, but whether the duty the negligent servant was called upon to perform was a non-assignable duty of the master, and from this duty alone his temporary position of vice principal or fellow servant was determined. The effect of the present opinion is to change this law, and to hold that a conductor, it matters not what duty may be imposed upon him by the master, as to all the other trainmen, whether on his train or on other trains, is a fellow servant; in short, that the duties of all the employes in the operating department of the road make them fellow servants, it matters not the relationship they bear to each other, nor that the duties they may be called upon to discharge may be what have been heretofore designated by this Court, and even in the opinion of JUDGE BRANNON, to be the non-assignable duties of the master. Among these non-assignable duties is the duty to furnish a safe place to work,—that is, as to trainmen, a safe track, not only in construction, but free from

dangerous obstructions of every kind,—and also to adopt, promulgate, and enforce safe and proper rules for the conduct of business, including the government of the machinery, and the running of trains on a railroad track. Mr. Bishop sums up the the duties of the master to be "watchfulness of ways and appliances." In the case of *Riley* v. *Railway Co.*, 27 W. Va. 145, it is held: "When a railroad company puts a superintendent, foreman, or other employe in its place to discharge some duty which it owes to its servants or employes, as to such duty such superintendent or other employe is not a co-servant, but the representative of the company, and as to such duty the company is bound by the acts or omissions of such middleman, the same as though the acts had been done or omitted by the company itself." This is the doctrine of vice principal, as settled in this State, first announced in the case of *Cooper* v. *Railway Co.*, 24 W. Va. 37, and followed in *Madden* v. *Railway Co.*, 28 W. Va. 610; *Criswell* v. *Railway Co.*, 30 W. Va. 798 (6 S. E. 31); *Daniel's Adm'r* v. *Railway Co.*, 36 W. Va. 397 (15 S. E. 162); *Core* v. *Railroad Co.*, 38 W. Va. 747 (18 S. E. 596); *Haney* v. *Railway Co.*, 38 W. Va. 570 (18 S. E. 748); *Flannegan* v. *Railroad Co.*, 40 W. Va. 440 (21 S. E. 1028),—all of which cases are overruled by the present case, in its effect, although the language is not made to so express.

In the case of *Railroad Co.* v. *Peterson*, 162 U. S. 353 (16 Sup. Ct. 843), Mr. Justice Peckham says: "If, instead of personally performing these obligations, the master engages another to do them for him, he is liable for the neglect of that other, which in such case is not the neglect of a fellow servant, no matter what his position as to other matters, but is the neglect of the master to do those things which it is the duty of the master to perform, as such." This language is in perfect harmony with former decisions of this Court cited above, and to which the Supreme Court of the United States continues to adhere. McKinney, Fel. Serv. 104, states the general rule to be that the master's duty to his employes is fully performed when he establishes and promulgates proper rules and regulations. With the carrying out and enforcement of such rules and regulations he has nothing to do. After the master has completed, furnished, and equipped the road,

and adopted rules and regulations, his duty towards his employes is at an end. If they disregard the rules, and operate the road at liberty, and thereby render the employment extra-hazardous and dangerous, the master is not liable to his servants injured thereby. Such is the conclusion of the opinion in this case, but such is not the law of this State, as heretofore settled by the decisions of this Court. They hold that, if a master engages in the *quasi* public operation of running a railroad, it is a duty incumbent upon him, both to the public and individuals, not only to adopt and promulgate proper rules, regulations, and schedules for the separate divisions of his business, called "trains," but also to keep a watchful and superintending eye over his whole road, to see that these rules, regulations, and schedules are faithfully adhered to and carried out, and if, for any unforseen cause, they are interrupted, hindered, or rendered impracticable, to substitute necessary special arrangements in lieu thereof. And as the master cannot be omnipresent, or, being a mere fiction of law, known as a "corporation," cannot be present at all, such duties must be performed by persons expressly delegated for the service, commonly known as "vice principals." So that it may, and often does, happen that each and every employe of a railroad may be called upon to fill the important position of a vice principal. For instance, when a train starts from one end of the road the track may be dangerously obstructed, in a manner not known to the trainmen, by numerous other trains running on or out of time, or by washouts, slips, bowlders, or otherwise; and it is the duty of the master, who is required to vigilantly guard the track, to notify the trainmen of these various obstructions, which duty he may impose on a conductor, brakeman, watchman, or other employe, and, if such employe fails to give the required notice or warning, his failure is imputed to the master. The holding of other courts is that all the master is required to do is to furnish competent servants to watch the road and give warning of obstructions, and for their negligence he is not liable. But this Court has heretofore held that these are positive duties of the master, which he cannot delegate in such manner as to escape liability. If we are to be guided by precedent, and follow the beaten track

marked out by our predecessors, it becomes equally erroneous to hold that a conductor, as such, is a fellow servant of the other trainmen, as to hold that he is a vice principal, without regard to the duty he is discharging. The decision in the present case abandons the old road, and, flying off at a tangent, undertakes to follow a path pointed out by certain text writers as the main highway pursued by the courts of other states whose doctrines are less settled than our own, and greatly limits in extent the non-assignable or positive duties of the master, even tending towards their entire abrogation, and which will be the natural sequence if the course evidently indicated is pursued, when it will be finally determined that all servants of a common master, without regard to rank, authority, or duty, are fellow servants, and thus wholly relieve the master from liability to them on account of the negligence of each other. It is better to have the law settled, even though it operate harshly, than to have a state of confusion produced by a continual abandonment of former maturely considered principles. I concur in the conclusion, but not in the principles stated contrary to the former decisions of this Court.

*Reversed.*