## BRIEGAL v. SOUTHERN PAC. CO.

(Circuit Court of Appeals, Fifth Circuit. January 9, 1900.)

### No. 842.

**MASTER AND SERVANT—FELLOW SERVANTS—RAILROAD ENGINEERS AND FIRE-MEN.**

Plaintiff, who was employed as a fireman on an engine of defendant railroad company, while oiling a turntable by direction of the engineer, which was a matter properly within the duty of the engineer to have attended to, under the circumstances and the rules of the company, was injured through the negligent act of the engineer. *Held* that, under the common-law rule as declared by the courts of the United States, the engineer was a fellow servant with plaintiff, for whose negligence the master was not liable.[1]

In Error to the Circuit Court of the United States for the Western District of Texas.

Millard Patterson and C. N. Buckler, for plaintiff in error.

T. J. Beall, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge. A. G. Briegal, plaintiff in error, filed in the district court of El Paso county, Tex., his petition claiming damages against the Southern Pacific Company in the sum of $10,000 for personal injuries. A petition and bond were filed by the said railway company for removal, and the case was removed to the United States circuit court, Western district of Texas. The plaintiff, Briegal, alleged in his petition that on February 9, 1898, he was in the employ of the defendant as a fireman on a "helper engine," which ran between the stations of Bowie and Dragoon Summit, in the territory of Arizona; that on said date, when said engine arrived at Dragoon Summit, he was ordered by E. J. Bowers, who was the foreman of the roundhouse at Bowie, and in charge of all the machinery and engines at said Bowie station, to oil the turntable at said Dragoon Summit; that plaintiff obeyed said order, and got down in the pit of the turntable, and was engaged in oiling the same, when the said Bowers started said turntable, and caused the same to revolve, without notifying the plaintiff, and his hand was caught and injured; that it was not within the scope of plaintiff's duty and employment as a fireman to oil the turntable, and that oiling the turntable was within the scope of the employment of said Bowers, and that oiling the same subjected him to risks not contemplated by his contract of hiring, and that said turntable was under the care, management, and control of said E. J. Bowers, as roundhouse foreman on that part of defendant's

---

[1] As to who are fellow servants, see note to Flippin v. Kimball, 31 C. C. A. 286.

road; that it was negligence on the part of the said Bowers to start said turntable without notice to plaintiff of his intention to do so; and that in doing so the place where plaintiff was set to work was rendered unsafe, and that thereby defendant violated its obligation to furnish plaintiff a safe place at which to labor, so that the accident hereinbefore described was caused, and the plaintiff was injured as above mentioned. The defendant filed its original answer, which consisted of a general demurrer, general denial, and a special answer setting up that plaintiff assumed the risk arising from oiling the turntable, contributory negligence, and that the said E. J. Bowers and the plaintiff were fellow servants. The case was tried at the April term, 1899. The defendant company requested the court to instruct the jury, after the evidence was all in, to return a verdict for the defendant, which said instruction was given by the court. The plaintiff excepted to the court's action before the jury retired, and tendered his bill of exceptions, which is found in the transcript.

The most favorable statement of the plaintiff's case in the court below is furnished by giving his own evidence, which is as follows:

"In the month of February, 1898, I was in the employ of the defendant, the Southern Pacific Company, at Bowie, in the territory of Arizona. I was employed as fireman on what is known as a 'helper engine.' At Bowie there is a roundhouse, and three engines stationed there all the time. They are all helper engines, and each engine has a separate crew. The purpose of having the roundhouse, engines, and crews at Bowie was for helping up the road engines each side of Bowie station. Mr. E. J. Bowers was the roundhouse foreman at Bowie at the time I was injured. He had charge of the roundhouse and all three of the engines and crews, and all machinery and all employés connected with the motive department at that place. There were seven or eight different tracks at Bowie, and also a turntable there. I had oiled this turntable at Bowie, on one occasion before I was injured. Mr. Bowers, the roundhouse foreman, ordered me to oil it. I oiled it by myself without the aid of any person. On the occasion when I was hurt, Mr. Bowers and myself had helped a train up the hill from Bowie to Dragoon Summit. When we arrived there, and our helper engine was detached from the through train, we ran the helper engine onto the side track, and, after I cleaned up the engine and wet down the coal, Mr. Bowers ordered me to get the oil can and oil the turntable at Dragoon Summit. I got the oil can, and went down into the pit of the turntable for the purpose of oiling the same. I had been at work for some time, and had oiled, I think, four wheels, and had hold of the fifth wheel for the purpose of turning it so as to get the oil hole perpendicular, so that I could pour in the oil. I had turned the little wheel just so that my hand was on top of the wheel, and just then Mr. Bowers, without giving me any notice or warning, started the turntable to moving, and in doing so it caught my hand between the wheel and the rail. The manner in which I oiled the turntable is as follows: I went to the little wheel, and, if I found that the oil hole was not perpendicular, I took hold of it and turned it around so as to bring the oil hole on top, and then would pour in the oil, and go to another wheel, and oil it in the same way; and as I was attempting to oil the fifth wheel in the same way my arm was caught by reason of Mr. Bowers starting the turntable without notifying me that he was going to do so. When I went down into the pit for the purpose of oiling the turntable it was stationary, and had not been revolving, and I had oiled four wheels before the turntable was moved at all, and, as I said before, I was engaged in oiling the fifth wheel when the turntable was started by Mr. Bowers. This is the first time that it had been moved or started while I had been oiling it. These three engines and their crews are kept at the roundhouse for the purpose of helping loaded cars up the hill to Dragoon Summit, and when we get to the top of the hill the helper engine is detached, placed upon the turntable, and turned around

so that it heads down towards Bowie. These helper engines run from Bowie to Dragoon Summit in helping trains up the hill, two or three times a day, and sometimes more, owing to the amount of traffic over the main line. Mr. Bowers had the exclusive control over these three engines and roundhouse and the employés operating the engines. Q. State what Mr. Bowers did there. A. He was foreman there. He had the say over everything in the line of motive power, just as the master mechanic would in Tucson. And there was nobody in that department over and above Mr. Bowers in authority. When my hand was caught, the little finger and the one next to it on my left hand were so badly mashed that it became necessary to amputate them at the joints where they joined my hand. The other two fingers on my left hand were badly mashed, and are now so stiff and drawn that they are of no value to me whatever. I cannot use them for any purpose. And the knuckle and bone of my hand where the big finger joins my hand was bruised and broken and forced down into the palm of my hand, where it now protrudes. Before I was hurt I was earning from $75 to $115 per month. I was then 24 years of age. The reason I got down into the pit was because Mr. Bowers ordered me to do so. At the time I was injured there were three engineers stationed at Bowie in charge of the helper engines,—Mr. Walker, Mr. Bowers, and Mr. Pierce; and each of the engineers ran his engine up to the summit, helping loaded trains. They alternated in that work. Dragoon Summit is about 45 miles from Bowie station. There was nobody present when I was injured except Mr. Bowers and myself. It was my duty as fireman to go with the engine to Dragoon Summit, when ordered by Mr. Bowers, and every time we would go to the summit the turntable would be used in turning the engine. I was employed at Bowie altogether as a fireman about 12 or 13 months before I was hurt. I was employed once at Bowie. Then I went onto the main line. Then Mr. Bowers told me to come and take the position at Bowie the second time. Putting it altogether, I worked at Bowie station about 12 or 13 months, but altogether I worked for the Southern Pacific Company about three years and very near three months; always as a fireman. I never oiled but two turntables in my life, the one at Bowie and the one at Dragoon Summit; and I believe I oiled one a very long time ago. There was nothing difficult or complicated about the work of oiling the turntable. The machinery is simple, and, but for somebody's carelessness, there is no danger about oiling a turntable. Any one can oil a turntable. It does not require skilled labor. I do not know whose business it is to oil the turntable. It was my duty to obey Mr. Bowers when he ordered me to oil the turntable, and I made no objection whatever to oiling it. I had on gloves at the time I was oiling the turntable. My glove did not get caught between the wheel and the rail. It is not true that before I got down into the pit to oil the turntable that Mr. Bowers and I had agreed to oil the same. Mr. Bowers never bothered his head about oiling the turntable. The turntable turned awfully hard, and that is the reason we could not turn the engines with that turntable, and consequently Mr. Bowers said, 'We will oil that turntable so as to make it go around lighter.' There are a number of these little wheels in this turntable, and there is a little oil hole in each of them. This oil hole was upside down, and I took hold of the wheel and turned it so that I could pour the oil into this oil hole. These little wheels are loose, and have some play between the rails, and you can turn them easily with your hand. They are loose because the center of the turntable rests on a pivot or center piece, and the weight of the turntable is on this center, and not on these little wheels. I did not state to Mr. Pratt that my hand was hurt because my glove got caught between the wheel and the rail. I told Mr. Pratt that I was turning the wheel, and my hand was caught between the wheel and the rail. I did not say to Mr. Pratt that it was an accident. Q. Wasn't you, as Mr. Bowers turned the table for you— When you were applying the oil as the wheels came to you, wasn't he turning and didn't he turn the table? A. No, sir; my goodness, no. Why, my goodness, no. If he had been, I would have left the wheel alone. I could never apply the oil if he had done that. I would never had my hands there so as to get the wheels around if he had been turning the turntable. Sometimes in turning the turntable some of the little wheels won't turn. I did not state to Mr. Bowers that, after my hand was hurt, that one of the wheels did not revolve, and that

I took hold of it with my hand, and in so doing ran it through and over the circle rail. When I came out of the pit after my hand was hurt I said to Mr. Bowers: 'You see my hand? My fingers are all hanging in threads.' I said to him. 'Why did you turn the turntable?' He said to me: 'It is all my fault. If I had not turned the table, you would not have a hand like that.' I did not say to Mr. Bowers: 'If you will turn the turntable around for me, I will oil it.' He had not turned the table one full turn before I was hurt. He just gave a little start, and just went a little bit, and my hand was hurt. Mr. Bowers could not see me where I was in the pit. It is not true that before he turned the table I hallooed, and told him that I was ready, and to set the table in motion. I signed a report of this accident after I was hurt. I read it, and know what I signed. Mr. L. S. Pratt employed me, and I was working for the Southern Pacific Company when I was injured. Mr. Pratt also employed Mr. Bowers. The report that I signed contains the following: 'Fireman Briegal was under the turntable, oiling. His hand got caught and rolled over [by] one wheel, mashing three fingers.' I wrote at the end of this report, which was already made out when it was presented to me, the following: 'This answer is correct, and that is all I know about it.' I told Mr. Pratt that while I was under the turntable Mr. Bowers carelessly started the turntable, and hurt my hand. I did not tell him that I had my glove on, and it was a little long, and I got it caught while the turntable was being turned. This accident happened between eleven and twelve o'clock in the morning. It was light. When I oiled the turntable at Bowie no person helped me. I turned the little wheels with my hands, the same as I did at Dragoon Summit."

The plaintiff then offered the following written instrument, after having proved that the signature of L. S. Pratt thereto was genuine, to wit:

"Office of Master Mechanic.

"Tucson, Arizona, December 18th, 1897.

"Bulletin Notice.

"Mr. Fred Clark, of Benson, and Mr. E. J. Bowers, of Bowie, are hereby appointed roundhouse foremen at the respective points mentioned. They will exercise and have the same authority as is vested in other foremen holding the same positions. Engine men and other motive-power employés located at these points, and all other employés who may be temporarily laid over there or held, will also come under their supervision, and are subject to their orders at any time. [Signed] L. S. Pratt, Master Mechanic."

Recalled:

"I never did tell Mr. Pratt that I was down in the turntable pit and Mr. Bowers was turning the table for me. I told Mr. Pratt that I had four or five wheels oiled, and just then the turntable commenced to go, and by turning that wheel my hand went up over it, and my hand was caught, and mashed."

L. S. Pratt, for the defendant, testified, among other things:

"That in February, 1898, he was master mechanic of the Tucson Division. At the time plaintiff was injured, he and Mr. Bowers were in the motive-power department. The head of that department is H. J. Small. He is superintendent of motive power at Sacramento, California. The plaintiff and Mr. Bowers were in the motive-power department at Bowie. Mr. Bowers was the foreman of the motive-power department at Bowie. The roundhouse foreman's jurisdiction is supposed to end at the turntable at the station where he is located, and the turntable at Bowie is located about 80 or 90 feet in front of the roundhouse. When he was on the road, and at the summit, he was not acting in the capacity of foreman, but as engineer. The turntable at the summit was used for the purpose of reversing the engines after they have helped a train to the top of the grade, in order that they may return to the station. These engines are stationed at Bowie for the purpose of helping trains up grades east and west of Bowie. My recollection is that at that time we had three helper engines and three crews stationed at Bowie. When these helper

98 F.—61

engines helped a train to the top of the summit, they usually run on the turn-table, and turn around, and get their orders, and return to their stations. I do not know whose duty it is to oil the turntable, but Mr. Bowers had the right to oil it. To oil the turntable is not a duty assigned to anybody especially. I have been in my present position two years and four months at Tucson. If Mr. Bowers thought it needed oil, and he saw fit to have it oiled, he had a right to do so. It was admitted that the turntable was not out of order."

All the other evidence in the case was either unfavorable to the plaintiff, or merely cumulative.

The written order appointing Bowers foreman at Bowie and defining his authority as such foreman being in evidence, the declarations of the plaintiff and others as to the extent of Bowers' authority were mere conclusions, and of no avail. The case made is that Bowers and the plaintiff were employés of the defendant company,—Bowers as an engineer, and the plaintiff as a helper or fireman; and Bowers was also the foreman of the roundhouse at Bowie. While running on the road and at Dragoon Summit (45 miles from Bowie), Bowers as engineer, and the plaintiff as helper, Bowers ordered the plaintiff to oil the turntable, and while the plaintiff was performing that service Bowers negligently turned the turntable, whereby the plaintiff was injured. It is clear that at Dragoon Summit, in the work then being done for the defendant company, the relation between Bowers and the plaintiff was that of engineer and helper. It was within their employment to oil the turntable at that place, which they were required to use if the same needed it. Bowers, as engineer, had a right to do it himself, or to direct his helper to do it; and the helper could do it under such direction, and this without changing the relations between the parties. At this time, and at Dragoon Summit, plaintiff and Bowers were fellow servants, irrespective of any superior authority Bowers might have over the plaintiff at Bowie roundhouse. As there is no fellow-servant statute in the territory of Arizona, where the cause of action originated, it is not disputed that the common-law rule as to fellow servants obtains. As the common law is declared in Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; Railroad Co. v. Keegan, 160 U. S. 259, 16 Sup. Ct. 269, 40 L. Ed. 418; Railroad Co. v. Peterson, 162 U. S. 347, 16 Sup. Ct. 843, 40 L. Ed. 944; Same v. Charless, 162 U. S. 359, 16 Sup. Ct. 848, 40 L. Ed. 999; Martin v. Railroad Co., 166 U. S. 399, 17 Sup. Ct. 603, 41 L. Ed. 1051; Mining Co. v. Whelan, 168 U. S. 88, 18 Sup. Ct. 40, 42 L. Ed. 390; without citing other cases, many of which are at hand,—the plaintiff and Bowers, at the time and place of plaintiff's injury, must be held to have been fellow servants, and on the case made the plaintiff was not entitled to recover.

A careful examination of the precedents cited by the learned counsel for the plaintiff in error will show that the cases themselves are either not controlling in authority, or else that the circumstances under which recovery was allowed were decidedly different from those in the present case. The principal case relied on—Railway Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. 184, 28 L. Ed. 787—has been very recently expressly overruled by the supreme court of the United States. In Railroad Co. v. Conroy, 20 Sup. Ct. 85, Adv. S. U. S. 85, 44 L. Ed. ——, the supreme court holds:

"Without attempting to educe from these cases a rule applicable to all possible circumstances, we think that we are warranted by them in holding in the present case that, in the absence of evidence of special and unusual powers having been conferred upon the conductor of the freight train, he (the engineer) and the brakemen must be deemed to have been fellow servants within the meaning of the rule which exempts the railroad company, their common employer, from liability to one of them for injuries caused by the negligence of another."

The case is exhaustively considered, the authorities fully reviewed, and, dealing with the Ross Case, the court, among other things, says:

"While the opinion in the Ross Case contains a lucid exposition of many of the established rules regulating the relations between masters and servants, and particularly as respects the duties of railroad companies to their various employés, we think it went too far in holding that a conductor of a freight train is ipso facto a vice principal of the company. An inspection of the opinion shows that that conclusion was based upon certain assumptions, not borne out by the evidence in the case, as to the powers and duties of conductors of freight trains. * * * To conclude, and not to subject ourselves to our own previous criticism of proceedings upon assumptions not founded on the evidence in the case, we shall content ourselves by saying that upon the facts stated and certified to us by the judges of the circuit court of appeals we cannot, as a matter of law based upon those facts, and upon such common knowledge as we, as a court, can be supposed to possess, hold a conductor of a freight train to be a vice principal within any safe definition of that relation."

The peremptory instruction given by the trial judge to find a verdict for the defendant was not erroneous for any of the reasons assigned on this writ, and the judgment of the circuit court is affirmed.