# CHARLESTON.

MILLER, *Admx.*, v. THE BERKELEY LIMESTONE CO.

Submitted September 10, 1910.     Decided April 16, 1912.

1. MASTER AND SERVANT—*Quarries—Safe Place to Work—Changing Conditions.*

    The general rule which obliges the master to furnish his servant a reasonably safe place in which to work, does not apply to a quarry where the work to be done necessarily changes conditions and renders the place more or less dangerous as the work progresses. (p. 645).

2.  SAME—*Quarries—Safe Place to Work—Changing Conditions—
    Assumption of Risk.*

    The master is not liable to his servant, as for negligence in
failing to furnish a reasonably safe place to work, for injury
received in a quarry, by a stone falling upon him from the bank
or cliff above, occasioned by the labor performed in operating
the quarry. Such an accident was a risk assumed by the ser-
vant.  (p. 645).

3.  SAME—*Quarries—Fellow Servants.*

    All laborers employed by a common master to work in a
stone quarry, whether their duty be to drill, to stoot off blasts,
or to remove loose stone from the cliff, stand in relation to
each other as fellow servants.  (p. 650).

4.  SAME—*Quarries—Foreman—Fellow Servants.*

    The foreman of a crew of laborers employed to work in a
stone quarry, who has power to employ and discharge men and
to direct their work, is nevertheless, only a fellow servant, un-
less his negligence relates to some non-delegable duty which
the master owed to the injured servant.  Whether a superior
servant is a vice principal depends upon the nature of his neg-
ligent act, and not upon his grade or rank.  (p. 650).

5.  SAME—*Foreman—Assurance of Safety.*

    In the absence of the master's negligence in selecting his
foreman, he is not liable for injury to a servant who was led
into danger by a false assurance of safety given by the foreman,
unless the negligent act of the foreman relates to the master's
non-delegable duty.  (p. 650).

Error to Circuit Court, Berkeley County.

Action by Annie C. Miller against The Berkeley Limestone
Company. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*Faulkner, Walker & Woods,* for plaintiff in error.

*Marshall McCormick, H. H. Emmert* and *James F. Minor,*
for defendant in error.

WILLIAMS, JUDGE:

Plaintiff's intestate, John W. H. Miller, was employed as a
driller in defendant's quarry, and on the 16th of July, 1907, was
fatally injured by a rock falling upon him, and died shortly

thereafter. This action is to recover damages for his death which plaintiff alleges was due to defendant's negligence in not providing deceased a safe place to work. On a demurrer to plaintiff's evidence, the court rendered judgment for defendant, and plaintiff obtained this writ of error.

Counsel for plaintiff insist that the evidence was sufficient to prove negligence, and that the court erred in sustaining the demurrer thereto. But the sufficiency of the evidence to establish negligence, depends upon the law relative to defendant's duty to its servant in the premises.

Defendant operated a stone quarry and employed a number of men, who worked under a foreman. Deceased had worked in the quarry for six or seven years, except in the winter season when the work stopped. The distance from the natural surface above, to the bottom of the quarry was sixty to eighty feet, and the ledge on which deceased was working at the time of the fatal accident was about eight feet wide, and from fifteen to twenty feet below the natural surface. From the ledge upward, the face of the quarry sloped at an angle of about forty-five degrees. This slope was not solid rock, but was composed of clay and rock mixed. On the day of the accident deceased and his helper, one Holly, were directed by the foreman to set the drill at a certain point on the ledge, and to begin drilling. They did so, and began drilling about one o'clock in the afternoon, and in two or three hours thereafter a rock, weighing three hundred pounds or more, which was partially imbedded in the clay some distance up the slope above the driller's head, loosened and rolled down striking him on the head and fatally injuring him.

It is a familiar rule of law too well recognized to merit discussion, that one of the non-assignable duties of the master is to provide his servants a reasonably safe place in which to work. But, like most other general rules, this one has its exceptions, and one is, that the master is not under duty to keep the working place safe, when the very work which the servant is employed to perform changes the condition of the place and makes it more or less dangerous, as the work advances. As the drilling and blasting progressed, the face of the quarry underwent frequent changes, causing the working place to become more dangerous at some times than at others. Deceased knew

this as well as his employer, and assumed such risks as would reasonably be expected to result from the changes in the condition of the place, and which would be brought about by the work which he was employed to perform. 2 Labatt on Master & Servant, sec. 588; White on Per. Inj. in Mines, sec. 125; *Jacoby Co.* v. *Williams,* 110 Va. 55; *Consolidated Coal & Mining Co.* v. *Floyd,* (Ohio) 25 L. R. A. 848; *Finalyson* v. *Utica Mining & Milling Co.,* 67 Fed. 507; *Thompson* v. *California Construction Co.,* 82 Pac. 367; *Heald* v. *Wallace,* (Tenn.) 71 S. W. 80; *Armour* v. *Hahn,* 111 U. S. 313; *City of Minneapolis* v. *Lundin,* 58 Fed. 525; *Gulf &c. Ry. Co.* v. *Jackson,* 12 C. C. A. 507; *Cleveland &c. Ry. Co.* v. *Brown,* 20 C. C. A. 147; *Fraser* v. *Red River Lumber Co.,* (Minn.) 47 N. W. 785; *Durst* v. *Steel Co.,* 173 Pa. St. 162; *Poorman's Silver Mines* v. *Devling,* (Colo.) 81 Pac. 252.

Giving full credit to the testimony of plaintiff's witnesses, considering all proper inferences deducible therefrom, and disregarding all of the testimony of defendant's witnesses conflicting therewith, as we must do on considering a demurrer to the evidence, the following facts may be regarded as proved, viz: That it was the duty of Abe Miller, a shooter, and Allie Waters, his helper, after a blast was set off and before re-setting the drill, to remove the earth and loose rock that would be liable to fall and injure the workmen below; that they knew, on the day before the accident, of the presence of the rock that fatally injured plaintiff's intestate, and thought it was dangerous, but failed to remove it; that Abe Miller, knowing that he himself would not be working at the quarry on the succeeding day, told his helper, Allie Waters, to remove the stone before the drill was set on the ledge below it on the next day; that Allie Waters did not remove it, because he was told by Tenas Milbourne, the foreman, to do something else. He does not remember what other work he was told to do. On cross-examination he says: "On Monday evening a while before quitting, (which was the day before the accident) when the driller called my attention to it (the rock) I went and told Mr. Milbourn." Mr. Milbourn denies this, but on demurrer to evidence we must accept the testimony of Waters as true. Presumably, the driller referred to by Waters was the deceased. Abe Madden, another witness for

plaintiff, testifies that on the morning of the accident he heard deceased tell Milbourn that "that stone looked dangerous up there," and that Milbourn replied that he had examined it, and that it was all right. This witness also says he heard Milbourn say to deceased that, if he did not set his drill there, he would get someone else in his place. Allie Waters also says that deceased "often helped (him) to clean off a set when he had no drilling to do."

J. F. Purcell, superintendent of the quarries and a witness for defendant, testifies that he instructed the drillers to see that everything was safe above them, before beginning to drill, and that he personally instructed deceased on the day of the accident. This is not denied, except inferentially by one or two other drillers who say that they were not so instructed. The foregoing recital is sufficient to show the state of facts which, as plaintiff's counsel contend, are sufficient to establish defendant's negligence. But some one, or more, of defendant's employes, whose duty it was to remove the dangerous stone, must stand in the relation of vice principal to deceased, before the law will hold it liable for their negligence. It is contended that Tenas Milbourn, Abe Miller and Allie Waters were all vice principals. That depends, however, upon whether the negligent act, of which they were guilty, related to the performance of a non-delegable duty which defendant owed to deceased, and that, in turn, depends upon whether it was the company's duty to keep the quarry, at all times, in a reasonably safe condition. If so, then Abe Miller and Allie Waters, whose duty it was to take down the loose stone, were performing a non-assignable duty of the master, and, therefore, occupied the relation of vice principal to deceased. "Whether the employe whose negligence caused the injury was or was not a vice principal is determined by the nature of the functions which he was, as a matter of fact, discharging at the time when the injury was received, and not by the appellation by which he was designated." 2 Labatt on Master & Servant, sec. 508; *Jackson* v. *Railroad Co.,* 43 W. Va. 380. But we have already said that the master was not under duty to keep the quarry safe. That it would sometimes become unsafe was to be expected. The work could not be performed without blasting down the cliff, and the blasting shat-

tered the rock and made the place unsafe. Deceased must have known that loose stones were liable to fall after a blast, if they were not removed, and men were employed to remove them. The work to be performed being of such character as, necessarily, to produce changes in the conditions surrounding the workmen, the law does not impose upon the master the duty to be present for the purpose of keeping it in a reasonably safe condition. The bank above the ledge was clay mixed with boulders or separate stones, and it was reasonable to suppose that the falling of such stones would be a frequent and a natural occurrence. At least, it does not appear that such was not frequently the case. Why, then, was the fatal accident not an incidental risk which deceased had assumed? It is clearly proven, and not denied, that, before the drill was set, deceased and his helper removed the loose earth and stones that had slid down upon the ledge. How long since they had fallen does not appear, but deceased evidently knew that more was liable to come down.

In *Durst* v. *Steel Co.,* 173 Pa. St. 162, plaintiff was employed with a gang of men under a foreman, to make excavations, and was injured by the caving in of a bank. The court in point one of the syllabus stated the law as follows, viz: "When danger can only arise as work progresses and be caused by the work done, the employer is not bound to stand by during the progress of the work to see when the danger arises. It is sufficient if he provides against such danger as may possibly or probably arise, and gives the workmen the means of protecting themselves. It is then the duty of the workmen to look out for such dangers, and use the means provided."

In *Mielke* v. *Ry. Co.,* (Wis.) 79 N. W. 22, plaintiff was employed as a workman in a quarry and was injured by a rock falling upon him from the cliff above, in very much the same manner that deceased was injured in the present case, the difference being that in that case, while it was shown to be the custom to examine the cliff after a blast was set off, it did not appear that such examination had been made before the accident, while in the present case the danger was apparent, but deceased had been told by the foreman that he had examined the rock and that it was safe. The court there held that the defendant was not liable as not having provided a safe place for

his servant to work, and in its opinion, at page 23, says: "The plaintiff and his fellow workmen were practically making the place in which they were to work. At each succeeding blast the conditions and surroundings were changed. The danger to which they were exposed was the direct result of their own operations. It was the result of their common labor, including that of the foreman. The plaintiff was familiar with the work. He knew that the condition was constantly changing by reason of his own acts. He appreciated the danger, because he knew that rocks were liable to fall. As stated in the *Larson Case:* 'The negligence, if any, in this view of the case, would be that of the plaintiff and his fellow servants, and the risk of it must be regarded as assumed by the plaintiff as incident to his employment; and, in any view that may be taken of the case, it must be regarded as a risk assumed by the plaintiff as an incident to his employment'."

*Fraser* v. *Red River Lumber Co.,* (Minn.) 47 N. W. 785, is also very much in point, because the plaintiff, in that case, was injured as a result of the negligence of a fellow servant in the performance of a particular work, a part of which was designed and intended as a convenient means to be used by plaintiff and others in performing their particular work. Defendant company was a manufacturer of lumber and employed upon its yards a crew of forty or fifty men, a part of whom were engaged in piling the green lumber, while others were employed in measuring, assorting, scaling and delivering dry lumber. According to a prevailing custom, in stacking the boards, at certain intervals in the pile the ends of boards were projected from the pile to be used as steps in ascending and descending the pile. In one of the piles a defective board had been negligently put in as a step, and plaintiff who belonged to the crew of scalers, and who had nothing to do with the piling, in ascending the stack, stepped upon this defective board and it broke, precipitating him to the ground and causing his injury. There was no proof that the men employed as pilers were not competent workmen. It was contended that the defendant was liable for the negligence of the pilers who had used the defective board, that it did not furnish a safe place, or safe appliance intended for plaintiff's use in performing his work. But the

court there held that the relation of plaintiff to the pilers was that of fellow servant, and that defendant was not liable.

The fact that the laborers were classified, as drillers, shooters, and their helpers, does not affect their relation to deceased as fellow servants. They were all engaged in a common employment of the master, whose duty in the premises was discharged when it employed competent workmen, and furnished them proper machinery and appliances for carrying on the work safely. Thereafter the business of keeping the quarry in a reasonably safe condition was a part of the servants' general employment. It is not alleged that Abe Miller and Allie Waters were incompetent servants. They were fellow servants with deceased, and the defendant is not liable for their negligence that caused the death of deceased. *Flannagan* v. *C. & O. Ry. Co.,* 40 W. Va. 436; *Oliver* v. *O. R. R. R. Co.,* 42 W. Va. 703; *Jackson* v. *N. & W. R. R. Co.,* 43 W. Va. 380; *N. & W. Ry. Co.* v. *Donnelly,* 88 Va. 853.

It is claimed that, because Tenas Milbourn had the power to employ, and to discharge laborers, having actually threatened to get another man to drill in deceased's place if he did not set his drill on the ledge at the point designated and begin drilling, he was, therefore, a vice principal, and defendant is liable for Milbourn's negligence in failing to remove the rock after it had been brought to his attention. But, as we have already intimated, the relation of vice principal does not depend upon the servant's rank or his authority to direct the movements of the laborers under him. The relation of vice principal is determinable by the character of the negligent act which causes the injury, *i. e.,* whether, or not, it pertains to a non-assignable duty of the master. It may be, and in fact is often the case, that a subordinate servant may be a vice principal in relation to a particular act or omission of duty, and only a fellow servant in all other respects; and, on the other hand, a foreman having power to direct the movement of laborers under him may be only a fellow servant. *Jackson* v. *N. & W. R. R.. Co.,* 43 W. Va. 380; 2 Labatt on Master & Servant, sec. 520, and numerous cases cited in note.

Notwithstanding an employer's liability statute, making the employer liable in damages to an employe who is injured and

who is himself in the exercise of due care and diligence at the time, "By reason of the negligence of any person in the service of the employer, entrusted with and exercising superintendence, whose sole or principal duty is that of superintendence," the supreme court of Massachusetts held, in *McGinty* v. *Reservoir Co.*, 29 N. E. 510, that, in respect to the negligent act which caused the injury, the superintendent was not a vice principal, although the negligent act had been performed under his direction. That case is very much in point, and we here give the facts: McGinty brought an action for damages for injury caused by the pulling up of a post to which the guy rope of a derrick had been fastened. It was the custom to move the derrick from place to place, and re-set it as occasion required. The post had been set by one Duval, under the direction of Pratt who was the superintendent. There was no defect in the derrick, or the guy rope, or the post or the piece of timber used to make the post more secure. The court below left it for the jury to determine whether or not Pratt, the superintendent, was a fellow servant with the plaintiff or a vice principal. But the court of appeals held that this was error, reversed the lower court, and held, as matter of law, as between plaintiff and the superintendent the relation was that of fellow servant. In the opinion, at page 512, the court says: "It was a part of their (the laborers) duty to put down the post; and, if there was any negligence in the manner in which or the place where it was sunk, and the mode in which the cross-timber was used, it was their negligence, and not the negligence of the master, or of Mr. Pratt, as representing him. Mr. Pratt, although the superintendent, was still only a fellow-servant, as between himself and the plaintiff, and the defendant would not be liable for his negligence."

"Where a city engineer, declared by the charter to be the general superintendent of all work done by the city in the streets, appoints a superintendent of sewer construction, to have charge of that department of the work, and the latter employs a foreman, who controls a gang of men, with power to hire and discharge, and direct when, where, and how to work, such foreman is not a general vice principal of the city in relation to a workman under him who is injured by his negligent act." *City of*

*Minneapolis* v. *Lundin,* 58 Fed. 525. Additional authorities holding that unless the negligence oof the foreman, causing the injury related to a non-assignable duty of the master, he is only a fellow servant, are the following: *Moons's Admr.* v. *Richmond &c. Co.,* 78 Va. 745; *Railroad Co.* v. *McKenzie,* 81 Va. 71; *Cleveland &c., Ry. Co.* v. *Brown,* 20 C. C. A. 147; *Poorman's Silver Mines* v. *Devling,* (Colo.) 81 Pac. 252; *What Cheer Coal Co.* v. *Johnson,* 56 Fed. 810; *Railroad Co.* v. *Baugh,* 149 U. S. 368; White on Per. Inj. in Mines, secs. 293, 294, 295.

Plaintiff does not allege that defendant neglected to employ competent men to work in its quarry, or that it failed to furnish suitable machinery and appliances, or that it failed to formulate suitable rules to guide and protect its employes in the performance of their work. The only neglect complained of is the alleged failure of defendant to keep the bank of the quarry, above the place where deceased was working, in a safe condition; in other words, that it failed to furnish him a safe place in which to work. But, in view of the nature of the work to be performed in a quarry, defendant was not bound to keep the banks free from dangerous rocks. The unfortunate accident was one of the natural incidents common to deceased's employ. ment, and was, therefore, a risk which he had assumed.

If Tenas Milbourn, the foreman, deceived deceased by assuring him that he had examined the rock and that it was safe, and thereby lulled his fears and led him into a danger which he would not otherwise have assumed, defendant is still not liable, for Milbourn, although foreman over deceased, was only his fellow servant. In ordering deceased to work in a place of danger Milbourn was not representing defendant in relation to a non-assignable duty; and was, therefore, not a vice principal. 2 Labatt on Master & Servant, sec. 539; *Briegal* v. *Sou. Pac. Co.,* 39 C. C. A. 359, 98 Fed. 958; *Moore Lime Co.* v. *Richardson's Admr.,* 95 Va. 326; *Jackson* v. *N. & W. R. R. Co.* 43 W. Va. 380; *Cochran* v. *Shannahan,* 51 W. Va. 137.

It not being shown that defendant was negligent in any respect, the question of contributory negligence on the part of deceased becomes immaterial. We will affirm the judgment.

*Affirmed.*

NOTE BY MILLER, JUDGE:   ROBINSON, JUDGE, *(concurring):*

I concur in the result, but cannot give my unqualified assent to the points of the syllabus.   I think they should be clearly limited by the principles stated in 1 Bailey on Personal Injuries, (2nd ed.) sections 127 and 250, and *Haggerty* v. *Hallowell Granite Co.,* 89 Me. 118, 35 Atl. 1029, *McMillan Marble Co.* v. *Black,* 89 Ten. 118, 14 S. W. 479, and *Black's Admr.* v. *Virginia Portland Cement Co.,* 106 Va. 121.   According to these authorities a master of a stone quarry is liable for injuries sustained by his servant, due to his negligence in making reasonable inspections and tests, if a reasonable time has elapsed after the place has been rendered dangerous to give opportunity to the master to inspect and test the place and make it reasonably safe for his servant to work in.   In *Jacoby* v. *Williams,* 110 Va. 55, 63, that court says:   "Unquestionably where a servant is employed to engage in a dangerous work, such as excavation, quarrying and the like, the master, as a general rule, owes him the duty to use ordinary and reasonable care and diligence to make his place of work as reasonably safe as the nature of the work admits of, but this general rule does not apply to a place which is constantly changing by reason of the work done."   Citing 26 Cyc 1117, and *Finalyson* v. *Utica M. & M. Co.* (C. C. A.) 67 Fed. Rep. 510.   It will be observed that this decision, as do many others, limits the exception to places which are "constantly changing by reason of the work done."   In other cases the general rule, with respect to the master's duty to provide a reasonably safe place to work, applies to quarries.   1 Bailey on Personal Injuries, section 127.   The decisions above cited illustrate the application of this principle, and by which I think the points of the syllabus should all be limited.

In this case there is evidence tending to show that the master, through its foreman, had been warned and notified as long at least as the day before the deceased was injured, that the overhanging rock was dangerous, and assured deceased that he had examined the rock and found it safe, and I am not altogether sure but the question of the reasonableness of the time for inspection by the master ought not to have been submitted to the jury, but I have yielded this point to the opinion of the majority.